George **DALLAM**, a minor, by William
M. Dallam, his guardian,
Plaintiff,

v.

**CUMBERLAND VALLEY SCHOOL DIS-
TRICT et al., Defendants.**

Civ. No. 75–68.

United States District Court,
M. D. Pennsylvania.

March 20, 1975.

Robert W. Barton, Killian & Gephart, Harrisburg, Pa., for plaintiff.

William M. Young, Jr., McNees, Wallace & Nurick, Harrisburg, Pa., for defendants.

## MEMORANDUM AND ORDER

HERMAN, District Judge.

The instant case requires this court to decide whether the constitutional protection afforded public school students in Goss v. Lopez, 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975), extends to the extra-curricular activity of interscholastic athletics.

The 15-year-old plaintiff transferred to the Cumberland Valley School District from the neighboring Camp Hill School District. Cumberland Valley is a member of the Pennsylvania Interscholastic Athletic Association (P.I.A.A.). The P.I.A.A. is an unincorporated voluntary association of approximately 600 public high schools, 600 public junior high schools and 40 to 50 private schools. The Association's function is to develop and enforce uniform rules governing interscholastic athletic competition among member schools. Cumberland Valley is a member of the P.I.A.A. and is consequently obligated to follow P.I.A.A. directives in order to maintain membership.

The minor plaintiff seeks a permanent injunction[1] to enjoin enforcement of a rule of the P.I.A.A. The rule automatically bars from interscholastic high school athletic competition for one school year any student who transfers from one school district to another but does not reside in the transferee district with a parent or guardian. Jurisdiction is

premised on 28 U.S.C. § 1343 and 42 U. S.C. § 1983.

The underlying objective of the rule is to prohibit athletically motivated transfers and high school athletic recruiting. The plaintiff has not taken issue with the reasoning behind the regulation. Rather, the plaintiff argues that the automatic ineligibility rule acts as an irrebuttable presumption in violation of his equal protection and due process rights guaranteed under the United States Constitution.[2] The defendants concede that no hearing procedure is provided in which a student could establish that he transferred for wholly non-athletic reasons, but following his transfer desired to participate in interscholastic ahtletics.

The issues now before the court are the plaintiff's motion for a permanent injunction and the defendants' motion to dismiss for lack of federal jurisdiction.[3]

 The defendants correctly view 42 U.S.C. § 1983 as requiring two jurisdictional elements to be present. The first, state action (or action under color of state law) is admittedly present. The Pennsylvania Supreme Court has ruled that the P.I.A.A. is sufficiently tied to the Pennsylvania education system to constitute state action. Harrisburg School District v. P.I.A.A., 453 Pa. 495, 502, 309 A.2d 353 (1973).

 The second jurisdictional element of § 1983 is a showing by the plaintiff that the defendant deprived him of a right, privilege or immunity secured by the Constitution or laws of the United States.[4] Both sides agreed that the issue at hand in no way qualifies as an "immunity" within the meaning of § 1983. The plaintiff first

1. The preliminary injunction was denied February 5, 1975 based on the plaintiff's failure to establish the required great immediate and irreparable harm. No additional evidence was offered at the permanent injunction hearing.

2. *See, e. g.*, Cleveland Board of Education v. LaFleur, 414 U.S. 632, 94 S.Ct. 791, 39 L.Ed.2d 52 (1974).

3. All the defendants joined in the motions of the P.I.A.A.

4. At no time did the plaintiff point to any act of Congress which might serve as the basis for a right or privilege within the meaning of § 1983. Instead, the plaintiff based his argument solely on the 14th Amendment to the United States Constitution.

argued that the right-privilege distinctions of old are no longer relevant to an application of the Due Process Clause of the 14th Amendment, as per Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L. Ed.2d 287 (1970). The plaintiff misperceives the issue. It is irrelevant indeed whether the instant plaintiff's participation in interscholastic athletics is either a right or privilege. The defendant P.I.A.A., as moving party on the motion to dismiss, must establish that participation in high school athletics is neither a right nor a privilege protected by the Constitution or laws of the United States.

The case of Goss v. Lopez figures prominently in the matter of this court's jurisdiction. The plaintiff argues that Goss alone is sufficient to confer jurisdiction, while the defendant contends the decision to be both inapplicable and distinguishable. The majority in Goss noted:

> "The Fourteenth Amendment forbids the State to deprive any person of life, liberty or property without due process of law. Protected interests in property are normally 'not created by the Constitution. Rather, they are created and their dimensions are defined' by an independent source such as state statutes or rules entitling the citizen to certain benefits. Board of Regents v. Roth, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972).
>
> \* \* \* \* \* \*
>
> "Having chosen to extend the right to an education to people of appellees' class generally, Ohio may not withdraw that right . . . absent fundamentally fair procedures . . . .
>
> \* \* \* \* \* \*
>
> "[I]n determining 'whether due process requirements apply in the first place, we must look not to the "weight" but the *nature* of the interest at stake.' Board of Regents v. Roth, *supra,* at 570–571. . . . The Court's view has been that as long as a property deprivation is not

*de minimis,* its gravity is irrelevant to the question whether account must be taken of the Due Process Clause." 419 U.S. 565, at 572, 95 S.Ct. 729, at 735, 42 L.Ed.2d 725. (Emphasis in original)

But Goss speaks in two ways. First, the Court repeatedly speaks of the serious damage to the plaintiff's reputation because misconduct was allegedly the basis for the suspension. The suspension was described as a "serious event," which could "seriously damage the student's . . . later opportunities for higher education and employment." 419 U.S. at ——, 95 S.Ct. at 736. Second, the Court speaks in terms of the *nature* of the *interest* and not its weight. *Id.*

Insofar as Goss turns on the magnitude of the injury it clearly is distinguishable from the case at bar. The plaintiff is not seeking instruction, or even *participation* in a particular area of athletics for neither has been denied him. The record establishes that the plaintiff has both instruction and athletic competition available to him. The only avenue of athletics temporarily closed is the opportunity to compete as a member of a high school team against other high school teams.

The problems raised by the latter theory of the majority in Goss were anticipated by Justice Powell in his dissent wherein he described the "thicket" into which the Court had entered:

> "Teachers and other school authorities are required to make many decisions that may have serious consequences for the pupil. They must decide, for example, how to grade the student's work, whether a student passes or fails a course, whether he is to be promoted, whether he is required to take certain subjects, whether he may be excluded from interscholastic athletics or other extracurricular activities . . . ." 419 U.S. 565, at 597, 95 S.Ct. 729 at 747, 42 L.Ed.2d 725.

In speaking of extracurricular activities, such as sports, the dissent observed that "[i]n these and many similar situa-

tions claims of impairment of one's educational entitlement identical in principle to those before the Court today can be asserted with equal or greater justification . . . ." 419 U.S., at 597, 95 S.Ct. at 748.

Following the Goss decision, the Court ruled on a similar suspension case in Wood v. Strickland, —— U.S. ——, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975). Although not deviating from Goss on the question of lengthy suspensions, the Court noted that " . . . § 1983 was not intended to be a vehicle for federal court correction of errors in the exercise of that discretion which do not rise to the level of violations of specific constitutional guarantees. . . ."

Section 1983 comes into play only in the event a right, privilege or immunity secured by the United States Constitution has been deprived under color of state law. The only right reasonably at issue in the instant case is the right to be free from a deprivation of life, liberty or property without due process called for in the 14th Amendment. Goss makes clear that the educational process is a property right created by the state. Once such a property right is created, then procedural due process comes into play to insure against an arbitrary taking of the right.

■ The defendants' attempt to distinguish Goss as a purely procedural due process case both begs the issue and overlooks a major portion of the opinion which defines the property interest in education. The liberty interest in a good reputation present in Goss is not here relevant. Despite the dualty of Goss's language, this court views the case to stand for the proposition that ʻ once the state transforms a privilege into a property interest, no matter what its weight, due process attaches.

Strickland dictates that the plaintiff have a "specific" property interest in interscholastic high school competition. The plaintiff argues such an interest to exist based on Goss, apparently because the case speaks in terms of "educational benefits." Presumably the plaintiff views interscholastic athletics as one of those "benefits" to be derived from the educational process. In point of fact the plaintiff is probably correct in asserting that participation in such an activity is beneficial.

■ It is significant that in the context of finding a property interest in education the majority in Goss spoke in terms of a "total exclusion from the educational process." 419 U.S. at 576, 95 S. Ct. at 737. It seems to us that the property interest in education created by the state is participation in the entire process. The myriad activities which combine to form that educational process cannot be dissected to create hundreds of separate property rights, each cognizable under the Constitution. Otherwise, removal from a particular class, dismissal from an athletic team, a club or any extracurricular activity, would each require ultimate satisfaction of procedural due process.

We do not read Goss as creating an avenue of judicial intervention into the basic, daily discretionary activities of the public schools which Strickland viewed as beyond the pale of § 1983.

Support for today's decision is found in a pre-Goss ruling by the Fifth Circuit in which the court was faced with a comparable fact situation:

"[T]he due process clause of the fourteenth amendment does not insulate a citizen from every injury at the hands of the state. 'Only those rights, privileges and immunities that are secured by the Constitution of the United States or some Act of Congress are within the protection of the federal courts. Rights, privileges and immunities not derived from the Federal Constitution or secured thereby are left exclusively to the protection of the states.' The privilege of participating in interscholastic athletics must be deemed to fall in the latter category and outside the protection of due process." Mitchell v. Louisiana High School Athletic Association, 430

F.2d 1155, 1158 (5th Cir. 1970); *Cf.* Sill v. Pennsylvania State Univ., 318 F.Supp. 608, 617 (M.D.Pa.), aff'd, 462 F.2d 463 (3d Cir. 1972). *See also,* Oklahoma High School Athletic Association v. Bray, 321 F.2d 269 (10th Cir. 1963).

■ This court views both Mitchell and Bray as good law, notwithstanding Goss. The court concludes that there exists no constitutionally protected property interest in competing for a place on a high school athletic team. To hold otherwise would too greatly strain the concept of property.[5] Having so concluded, the court finds itself without subject matter jurisdiction. The motion to dismiss will be granted.

An appropriate order will be entered.

---

5. Even were this court to find a property interest in interscholastic athletics, it would clearly be a *de minimis* one. As noted, the plaintiff has access to physical exercise, athletic instruction and even competition (with athletes from his own school). He is merely barred from competing as a member of one high school team against athletes from other schools for one year.