**Russell DAVIS, Plaintiff**

v.

**CENTRAL DAUPHIN SCHOOL DISTRICT SCHOOL BOARD and Van Orman, Ellis, Defendants.**

**Civ. No. 79–190.**

United States District Court, M. D. Pennsylvania.

Feb. 27, 1979.

As Corrected May 3, 1979.

James H. Rowlands, Jr., Harrisburg, Pa., for plaintiff.

Edward E. Knauss, III, Metzger, Wickersham, Knauss & Erb, Harrisburg, Pa., for defendants.

## OPINION

MUIR, District Judge.

### I. Introduction.

Russell Davis, a student at the Central Dauphin East High School, filed this action pursuant to 42 U.S.C. § 1983 alleging that the Defendants violated his constitutional rights. On February 22 and 23, 1979, a hearing was held before the Court sitting without a jury on the application for preliminary and final injunctive relief. The following are the Court's findings of fact, discussion, and conclusions of law.

### II. Findings of Fact.

1. Central Dauphin School District is a school district in Dauphin County, Pennsylvania, in which there are two senior high schools with grades 10, 11 and 12 each.

2. Central Dauphin East High School is a high school within Central Dauphin School District and is a member of the Pennsylvania Interscholastic Athletic Association.

3. The Central Dauphin East High School Boys Interscholastic Basketball Team played its last regularly-scheduled game on February 16, 1979 for the 1978–1979 season.

4. The team was entitled to participate in post-season tournament play conducted by the Pennsylvania Interscholastic Athletic Association for determining the State champion basketball team.

5. Russell Davis, on January 30, 1979, was a member of the senior class of Central Dauphin East High School.

6. On January 30, 1979, Russell Davis was a member of the Varsity Interscholastic Basketball Team of Central Dauphin East High School. (Undisputed)

7. On January 30, 1979, Russell Davis played on the Central Dauphin East High School basketball team against the basketball team of Carlisle Area High School at Carlisle, Pennsylvania. (Undisputed)

8. Immediately after the conclusion of the game which was hotly contested, Russell Davis and Gregg Ludlam, who is also a member of the Central Dauphin East High School basketball team had a dispute in the locker room of the Central Dauphin East High School basketball team, resulting in one blow struck by Russell Davis on the jaw of Gregg Ludlam.

9. The blow caused a compound fracture of the jaw of Gregg Ludlam and his resultant hospitalization at Community General Osteopathic Hospital, Harrisburg, Pa.

10. On January 31, 1979, Dio K. Chamberlin, principal of Central Dauphin East High School, advised Russell Davis that he would be suspended from school attendance for a period of one to three days and it would be necessary for the mother of Russell Davis to come to the school for a conference. (Undisputed)

11. On January 31, 1979, the principal of Central Dauphin East High School, Dio K. Chamberlin, in company with the basketball coach Charles R. Harvey, and the faculty manager of athletics, John K. Brunner, interviewed several of the players who witnessed the incident and then had a conference with Russell Davis, the plaintiff, in connection with the incident. At the meeting, Davis was aware of the charge of conduct unbecoming an athlete which had been lodged against him and had ample opportunity to present his version of the incident.

12. After discussion with the faculty manager, the principal and coach decided to impose on Davis an indefinite suspension from the basketball team because of Davis's conduct which was unbecoming an athlete.

13. The indefinite suspension was imposed pursuant to ¶ 2(d) of the Athletic

Association Policy of the Central Dauphin School District adopted in August, 1975.

14. The Athletic Association Policy of the School District provides on page 4 in ¶ 2 as follows:

2. If a student leaves a team or squad under the "dishonorable" conditions described below, he shall become ineligible in all sports for a period of 12 calendar months from the day of dismissal. This action shall be taken with the full knowledge and approval of the principal.

a. Smoking, drinking (use of intoxicating beverages), and/or use of controlled substances.

b. Deliberate destruction of school property.

c. Stealing school property—teammates' equipment.

d. Conduct unbecoming an athlete as determined by the coach and principal.

e. Quitting—failure to report and turn in equipment.

15. On February 1, 1979, there was a conference in the office of Dio K. Chamberlin attended by Dio K. Chamberlin, Mrs. Ruth Davis (mother of Russell Davis) and Russell Davis. (Undisputed)

16. On February 1, 1979, following the conference in the principal's office, Russell Davis met personally with Ellis Van Orman, Superintendent of Central Dauphin School District, in Mr. Van Orman's office at which meeting Davis related his version of the incident.

17. On February 2, 1979, Russell Davis was readmitted by Dio K. Chamberlin, principal, to school attendance. (Undisputed)

18. On February 2, 1979, Ellis Van Orman, Superintendent of Central Dauphin School District, determined that Russell Davis would be suspended from the basketball team of Central Dauphin East High School for the remainder of the season. (Undisputed)

19. On Monday, February 5, 1979, Dio K. Chamberlin, principal of Central Dauphin East High School informed Russell Davis that he was suspended from the basketball team of Central Dauphin East High School for the remainder of the season. (Undisputed)

20. On Tuesday, February 6, 1979, Ellis Van Orman, Superintendent of Central Dauphin School District, received a telephone call from Russell Davis and Mr. Van Orman confirmed that the suspension would be for the remainder of the season.

21. On Tuesday, February 6, 1979, Mr. Van Orman spoke again to Mrs. Davis in his office and reaffirmed the decision.

22. At no time did Russell Davis deny that he had struck the jaw of Gregg Ludlam causing the fracture.

23. At no time did Gregg Ludlam attempt to strike the Plaintiff, Russell Davis.

24. The Board of School Directors at a regular meeting of the Board on February 12, 1979, was requested by Plaintiff to terminate the suspension of Russell Davis from the Central Dauphin East High School basketball team but no action was taken by the Board.

### III. Discussion.

Davis has filed this action pursuant to 42 U.S.C. § 1983 alleging that the Defendants have violated his constitutional rights. At the hearing on the application for injunctive relief, Davis argued that he was suspended from the basketball team without any hearing in violation of his constitutional rights to due process of law, that the Defendants were without authority to suspend him pursuant to their Athletic Association Policies and that the phrase "conduct unbecoming an athlete" used in the policies is void for vagueness. The Court will deal with these claims *seriatim*.

Davis first argues that the Defendants failed to furnish him with notice and a hearing in violation of his constitutional right to due process of law preparatory to suspending him from the basketball team for the remainder of the basketball season. A federal court should decide pendent, nonconstitutional claims if by doing so the Court can avoid the decision of difficult constitutional issues. This principle is true

even if the pendent claims standing alone are beyond the jurisdiction of the federal court. *See Hagans v. Lavine*, 415 U.S. 528, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974); *United States of America v. Herman*, 589 F.2d 1191 (3d Cir., opinion filed November 17, 1978); *Gagliardi v. Flint*, 564 F.2d 112 (3d Cir. 1977), *cert. denied*, 438 U.S. 904, 98 S.Ct. 3122, 57 L.Ed.2d 1147. It is the law of this Circuit that a district court may exercise pendent jurisdiction over state law claims if the federal constitutional claims asserted are not so insubstantial as to be incapable of supporting federal jurisdiction. *See Gagliardi v. Flint*, 564 F.2d 112 (3d Cir. 1977), *cert. denied*, 438 U.S. 904, 98 S.Ct. 3122, 57 L.Ed.2d 1147. Therefore, although the Court should decide the pendent nonconstitutional claim that the Defendants were without authority to suspend him, the threshold inquiry to be made by this Court is whether Davis's constitutional claims are insubstantial.

The Defendants contend that Davis was not deprived of a property interest which is protected by the due process clause of the Fourteenth Amendment. In *Bishop v. Wood*, 426 U.S. 341, 344, n. 7, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976), the Supreme Court, citing *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), indicated that a property interest may not be derived from the due process clause itself but must be created and defined by some independent source such as state law. In *Bishop*, a policeman was dismissed from his position for allegedly false reasons without a hearing under an ordinance which stated that if an employee was negligent, inefficient, or unfit to perform his duties, he could be dismissed by the city manager. The District Court held and the Court of Appeals agreed, (a) that under state law, an employee has no property interest in his job unless the ordinance under which he is employed contains an explicit guarantee and (b) that the provision in question did not contain such a guarantee. The Supreme Court accepted the lower court's interpretation of state law and affirmed the holding that Bishop had not been deprived of a property interest. Thus,

this Court must determine whether under Pennsylvania law a high school athlete has a continuing interest in the continuation of his participation in interscholastic athletics.

Russell Davis was suspended pursuant to ¶ 2(d) of the Central Dauphin School District's Athletic Association Policies which reads "Conduct unbecoming an athlete as determined by the coach and principal." In addition to ¶ 2(d), the Central Dauphin School District's Athletic Association Policies set forth other conduct which would result in suspension from interscholastic sports for twelve months e. g. use of intoxicating beverages, quitting, deliberate destruction of or stealing school property. The athletic policies also allow suspension for a season for violation of specific rules set up by the coach or by school policy. The School District's Athletic Association Policies imply that an athlete may participate in interscholastic athletics unless he violates some provisions of the policies. The Court is of the view that Davis had a reasonable expectation under the athletic policies that he would be permitted to participate in high school athletics unless he violated the provisions of the athletic policies. At the very least, then, it is arguable that Davis had a property interest in participating in high school athletics which was created and defined by an independent source, the Central Dauphin School District's Athletic Association Policies.

Defendants contend that Davis has no property interest in playing interscholastic basketball. In support of their proposition, Defendants stress two cases in this Circuit, *Moreland v. Western Pennsylvania Interscholastic Athletic League*, 572 F.2d 121 (3d Cir. 1978) and *Dallam v. Cumberland County School District*, 391 F.Supp. 358 (M.D.Pa. 1975). However, in *Moreland*, the claim of a federally protected right to play basketball was not raised on appeal and the question has not been decided by the Court of Appeals. In *Dallam*, the Court did not have before it a policy of the School District which implicitly noted the right to participate in interscholastic athletics. The Court concludes that the cases are distinguishable.

■ Based on the foregoing discussion, the Court is of the view that the issue of whether the athletic policies of the Central Dauphin School District created a property interest in Davis to participate in interscholastic athletics is at least a substantial federal question. Therefore, because a constitutional issue of whether Davis had a property interest in playing basketball exists and because that federal question is substantial, the Court may consider the pendent state claims urged by Davis.

■ Although the Court is normally reluctant to consider pendent state law claims preferring that such claims be raised in a state court which often has more familiarity with state questions, the Court will consider the pendent claims because there simply is not time for a state action to be brought and a state court to act on the matter. Davis has questioned the authority of Superintendent Van Orman to suspend him for the remainder of the basketball season. Paragraph 2(d) of the Athletic Association's Policies indicates that Davis could be suspended for a period of twelve calendar months from all sports if his actions constituted conduct unbecoming an athlete as determined by the coach and principal. On January 31, 1979, after a conference among Davis's coach, Mr. Brunner, and Principal Chamberlin, Davis was indefinitely suspended from the basketball team. Subsequent to that decision, Superintendent Van Orman made the suspension definite by deciding that Davis could not participate on the basketball team for the remainder of the season, including the playoffs. Davis has suggested that Superintendent Van Orman was without power to impose a suspension for the remainder of . the basketball season. Defendants disagree.

Defendants first point to the School Board's Policy for the Central Dauphin School District which contains a job description for the Superintendent. That description sets forth in part that the Superintendent is chief executive officer of the Board and that "He shall have supervision over all matters directly or indirectly affecting the operation of the School District." An examination of this provision and the other provisions of the Superintendent's job description does not indicate in clear terms that the Superintendent had the power to impose the sanction of suspension for a season. The Court cannot fairly read the job description as granting to Van Orman the right to suspend particularly because the athletic policies specifically set forth the procedures and persons responsible for imposing suspension.

The Court has also examined the statutes of Pennsylvania in an attempt to discover authority for Van Orman's decision to suspend Davis. The Act of March 10, 1949, P.L. 30, as amended, Act of January 14, 1970, (1969), P.L. 468, 24 P.S. § 10–1081 sets forth the duties of Superintendent. Nowhere does that section indicate either explicitly or implicitly that the Superintendent has the power to suspend athletes from interscholastic teams. Furthermore, the Court notes that the Act of March 10, 1949, P.L. 30, as amended, Act of July 25, 1963, P.L. 315, 24 P.S. § 13–1317, indicates that the authority of teachers, vice principals and principals over the conduct and behavior of students is the same authority as is exercised by their parents or guardians. That section makes no mention of the Superintendent of Schools. Similarly, the Act of March 10, 1949, P.L. 30, as amended, Act of January 14, 1970, (1969), P.L. 468, 24 P.S. § 13–1318 governing the suspension and expulsion of pupils permits a principal or teacher in charge of a public school to suspend temporarily a pupil and the board of directors of a school district to conduct a hearing and suspend or expel a pupil. That section also does not mention the Superintendent of a school district. After an examination of the regulations submitted by the Defendants and after an independent review of the statutes of Pennsylvania, the Court is of the view that Superintendent Van Orman was without authority to suspend Russell Davis from the basketball team for the remainder of the season.

Davis also appears to argue that the indefinite suspension imposed by Coach Har-

vey with the approval of principal Chamberlin was invalid. While the Court notes that the Athletic Association Policies of the Central Dauphin School District are woefully incomplete and poorly drafted, the Court concludes that a fair reading of the athletic policies permits the coach with the approval of the principal to impose a suspension, including an indefinite one, of up to 12 months for conduct unbecoming an athlete. In Davis's case, the coach and principal agreed to suspend him indefinitely as authorized by the School District's policies. Davis's argument that the coach and principal could not suspend him indefinitely is without merit. The Court is also of the view that it follows from the proposition that the coach with the approval of the principal may suspend indefinitely that the decision to suspend Davis indefinitely may be altered by the coach with the approval of the principal.

■ Because the Court found in favor of the Defendants on Davis's pendent state claim with regard to the decision of the coach and principal to suspend him indefinitely the Court normally would reach the federal question raised by Davis of whether he received procedural due process on the sanction of an indefinite suspension. The Court need not decide, however, whether the Defendants have created a property interest in Davis to play basketball because even if such an interest has been created, Davis has received the process that is due.

In *Goss v. Lopez,* 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975), the Court set forth the procedures to be followed in suspending a student from school. The Court believes that the procedures detailed in *Goss* are applicable in this case. In *Goss,* the Court indicated that a student faced with a temporary suspension of 10 days or less should be given oral or written notice of the charges against him and if he denies them, an explanation of the evidence that the school authorities have and an opportunity to present his side of the story. *See Goss v. Lopez,* 419 U.S. 565, 581, 95 S.Ct. 729, 42 L.Ed.2d 725. From the evidence adduced at the injunction hearing, it appears that Davis was aware of the charges and evidence against him in the meeting held by his principal on January 31, 1979. Although the testimony presented was conflicting, the Court is of the view that Davis had an opportunity, although he may not have exercised it, to present his side of the story in the meeting with Chamberlin, Harvey, and Brunner. Consequently, Davis's constitutional challenge to the indefinite suspension is without merit.

■ Davis has also suggested that his suspension for conduct unbecoming an athlete is void because ¶ 2(d) is vague. The Court believes that Davis's argument is without merit. A provision providing a penalty is insufficient if it is so vague that it either fails to afford fair warning to persons penalized under the provision that the conduct for which they could be punished is prohibited, *see Bouie v. City of Columbia,* 378 U.S. 347, 84 S.Ct. 1697, 12 L.Ed.2d 894 (1964) or that it contains no standard of conduct at all. *See Coates v. City of Cincinnati,* 402 U.S. 611, 91 S.Ct. 1686, 29 L.Ed.2d 214 (1971). Davis's act in striking a fellow student and fracturing his jaw falls clearly within the provisions of conduct unbecoming an athlete. Even if ¶ 2(d) is imprecise, the term gave Davis fair notice that the conduct which he engaged in was prohibited and, consequently, was not vague as applied to this case. *See Parker v. Levy,* 417 U.S. 733, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974); *United States v. Pray,* 452 F.Supp. 788 (M.D.Pa.1978). Davis has no standing to complain that other persons who engage in a different course of conduct may conceivably not be constitutionally punished under ¶ 2(d). *Parker v. Levy,* 417 U.S. 733, 755–56, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974). Davis has not suggested that the term "conduct unbecoming an athlete" has deterred him in the exercise of his constitutional rights. The Court believes that it would be improper for the Court to raise this question on its own because the Defendants have not had an opportunity to address the issue. Consequently, Davis's claim that the ¶ 2(d) is vague will be dismissed.

The Court notes that the Defendants specifically objected to consideration by this Court of question of whether the phrase "conduct unbecoming an athlete" was vague on the ground that it was not within the issues raised by the pleadings. It is the Court's view that it is in the interest of justice to consider this particular claim given the emergency nature of this action. Defendants had an ample opportunity to rebut the claim and given the disposition made of this issue they have not been prejudiced by the Court's consideration of the matter. *See* F.R.Civ.P. 15(b).

Because the Court believes that Davis will suffer imminent and irreparable harm, the Court will direct that the decision of the Superintendent to suspend Davis for the remainder of the season be vacated and will order the decision of the coach and principal to suspend Davis indefinitely to be reinstated.

▮▮ Davis has also requested that the Court declare Central Dauphin School District's discipline policy to be unconstitutional because it fails to assure students due process. The Court will not grant this relief because Davis was properly suspended by the coach and principal and the Court will vacate the decision of the Superintendent. Thus, Davis has no standing to seek this particular relief. Davis has sought an injunction preventing school officials from issuing future suspensions pursuant to the policy. Because the policies themselves do not appear invalid and because of the vacating of the Superintendent's decision, the Court will not grant this request. Finally, Davis has requested that the Defendants be ordered to remove references to the suspension from his record. Davis has not demonstrated that the reference to his suspension is improper and will cause him irreparable harm. Therefore, the Court will decline to grant this request for injunctive relief.

### IV. Conclusions of Law.

1. Davis was afforded due process of law as required under the circumstances of this case because he understood the nature of the offense with which he was charged and was given several opportunities to be heard.

2. The disciplining of athletes is conferred upon the coach of the sport involved subject to the approval of the principal of the particular high school.

3. The Central Dauphin Athletic Policies do not expressly authorize the Superintendent of schools to discipline athletes.

4. Neither the Central Dauphin Athletic Association Policies nor the job description of the office of Superintendent of the school district adopted by the School Board impliedly authorizes the Superintendent of schools to discipline athletes.

5. The loss of the opportunity of Russell Davis to play basketball as a member of the team is irreparable.

6. The action of the Superintendent in suspending Russell Davis from basketball for the balance of the basketball season will be vacated.

7. The indefinite suspension of Russell Davis by Coach Harvey approved by Principal Chamberlin will be reinstated.

8. Coach Harvey has the power to terminate the suspension of Davis from the team with the approval of Principal Chamberlin.