## Billman v. Big Spring School District

*John McCrea, III*, for plaintiffs.
*Frances H. DelDuca*, for defendant.

SHEELY, *P.J.*, August 16, 1983

### HISTORY

The present action arose from an incident occurring on March 26, 1983, in which Randy Billman

and Scott Kirkpatrick, students attending Big Spring High School, procured and consumed a bottle of wine while driving in Randy's car. The two boys had planned to attend a school dance later that evening, but upon reaching the school grounds, Scott became ill and had to be taken home by his aunt. Pursuant to defendant School District's extracurricular discipline policy, §§5343.2(b) and 5343.4, and following an informal hearing with the school principal, the boys were suspended from classes for a ten day period and expelled from participation in all extracurricular activities for a period of one year. The Big Spring School Board subsequently denied plaintiffs' request for a hearing.

Plaintiffs now seek to permanently enjoin defendant from suspending their extracurricular activities for one year, and to have §§5343.2(b) and 5343.4 of defendant's extracurricular discipline policy declared unconstitutional.

A hearing on the injunction was held before this court on July 15, 1983. From this hearing, we make the following

## FINDINGS OF FACT

1. On Saturday, March 26, 1983, plaintiffs, Scott Kirkpatrick and Randy Billman, consumed one bottle of wine while driving in Randy's car.

2. Randy met Scott in the Big Spring High School parking lot at approximately 7:30 pm on March 26, 1983, one-half hour before a school dance was to begin.

3. Plaintiffs then left the school property and while driving around off the school grounds, consumed the wine and disposed of the bottle.

4. Plaintiffs returned to the school parking lot after disposing of the empty wine bottle and walked to an athletic field on the school grounds. By this time, Scott was feeling very ill.

5. The two boys were approached by the school's policeman. Randy explained that Scott was not feeling well and that he would take care of Scott.

6. Shortly thereafter, Randy left the school premises and Scott was helped back to the high school by the school's policeman and several students.

7. Scott became sick in the school's lavatory; his aunt was contacted (as his parents were in Harrisburg for the evening) to take him home.

8. Scott was 15 years old at this time, and was in the tenth grade at Big Spring High School. Randy was 16 years old at the time of this incident, and in the 11th grade at Big Spring High School.

9. Both boys were aware of the school board's policy of excluding from extracurricular activities any student possessing and/or consuming an alcoholic beverage. Written copies of this policy had been distributed to the students at the beginning of the school year.

10. Both boys were members of the baseball, football and basketball teams. In addition, Scott had planned to accompany the Spanish Club to Spain in the spring of 1984, and Randy had considered applying for an athletic scholarship if he attended a small college.

11. Both boys are excluded from any participation on the sports teams, and are precluded from attending the school proms and dances, class trips, and participation in school plays, shows and clubs.

12. The exclusion from extracurricular activities extends for one calendar year as a result of the March 26, 1983 drinking incident.

13. Frank Sudak, the high school principal, met with Scott's parents on Monday, March 28, 1983, to discuss the Saturday evening drinking incident. The Kirkpatricks were knowledgeable of the incident, requested the conference, and said that Scott's presence was not necessary. Scott himself was not questioned about the incident.

14. Sudak also met with Randy and his parents on Monday, March 28, 1983.

15. The principal wrote letters to both the Kirkpatricks and the Billmans, dated March 28, 1983, in which he informed them that their sons were suspended from school until April 14, 1983, and suspended from all extracurricular activities for one calendar year by reason of their alcohol consumption.

16. Neither Randy nor Scott had been involved in any disciplinary problems before the March 26, 1983 incident.

## DISCUSSION

Plaintiffs bring this action alleging irreparable harm as a result of the one year exclusion from extracurricular activities imposed upon the two boys as punishment for their alcohol consumption. We assume jurisdiction to consider the issue of whether a permanent injunction should be issued to enjoin defendant from enforcing the penalty. After careful consideration we find that defendant's action was

reasonable and not in violation of plaintiffs' rights, and hereby deny plaintiffs' request for a permanent injunction.

The Public School Code of 1949, Act of March 10, 1949, P.L. 30, Art. V, 24 P.S. §5-510 [hereinafter Code] specifically allows the school board to adopt reasonable rules regarding the schools' students "during such time as they are under the supervision of the board of school directors and teachers, . . ." Further, 24 P.S. §5-511(a) directs:

The board of school directors in every school district shall prescribe, adopt, and enforce such reasonable rules and regulations as it may deem proper, regarding (1) the management, supervision, control or prohibition of exercise, athletics, or games of any kind, school publications, debating, forensic, dramatic, musical, and other activities related to the school program . . . *and may provide for the supension, dismissal, or other reasonable penalty* in the case of any . . . pupil who violates any of such rules or regulations. (Emphasis supplied.)

It is clear that the school board is authorized by the state legislature to enact "reasonable" rules and regulations by which the students and their involvement in extracurricular activities are to be governed. The issues to be decided, then, are whether the imposition of the penalty violated the plaintiffs' due process rights, and whether the extracurricular suspension policy for alcohol consumption is "reasonable."

The State Board of Education has promulgated regulations to govern the Commonwealth's system of education. 22 Pa. Code §12.6(b) permits the expulsion of a student for a period of ten days, i.e. a "full suspension," after an informal hearing before

the principal is offered to the student and the student's parents. The informal meeting allows the student to explain the circumstances of the event, and permits the principal and the student's parents to meet and discuss the situation. 22 Pa. Code § 12.8(f) states that the due process rights afforded by an informal hearing are to include the following: written notice to the student and his parents of the reasons for suspending the student; notice of the time and place of the hearing; the right to cross-examine any witnesses; and the student's right to speak on his own behalf. This informal hearing is an administrative proceeding, not a criminal one, and as such has more flexible due process requirements. Abremski v. Southeastern School District, 54 Commw. 292, 296, 421 A.2d 485, 487 (1980). Abremski, id., stated:

Even for a ten-day suspension, there is no federal constitutional mandate for advance notice or an adversarial hearing, much less a right to counsel, so long as *some* form of notice and *some* form of hearing are provided. Goss v. Lopez, 419 U.S. 565, 579 (1975). (Emphasis in original.)

We find that plaintiffs' due process rights were afforded by the actions of Sudak, the high school principal, despite the fact that written notice of the hearing was not given to plaintiffs. Under the present facts, the absence of a writing was merely a technical error which did not diminish plaintiffs' due process rights.

Scott's parents themselves initiated the meeting with Sudak by contacting the principal on March 28 and requesting a meeting that same day to discuss the drinking incident. Scott's parents requested that he not attend the meeting, and while Scott knew of the meeting, he did not insist upon attending. The

Billman's also met with Sudak on March 28; Randy was present with his parents at this meeting. No evidence was presented to show that anything other than the expected subject of the meeting, i.e. the drinking incident, was discussed at the meeting. As the incident in question was known to plaintiffs before the meeting, and the time and place were mutually agreed upon, written notice would have merely been superfluous and served only to delay the time of the requested meeting. Full written notice of the suspensions and the reason for their imposition was sent to the boys' parents after the informal hearings were held and the suspensions imposed. We do not find that plaintiffs' due process rights were violated. Accordingly, we proceed to determine the reasonableness of the school board's disciplinary policy.

The Big Spring School District's extracurricular discipline policy is set forth as follows:

§5343.1    Student participation in any extracurricular activity is a privilege which may be revoked or suspended when established rules or regulations are violated.

§5343.2    The following violations will result in the suspension or revoking of extracurricular participation privileges: ·

•   •   •   •

§5343.2b    Possession and/or use of any . . . alcoholic beverage . . . which may adversely affect the health, safety, or welfare of any student, . . . will result in suspension from all extracurricular ac-

tivities for a period of one (1) calendar year from date of verification of offense. . . .

•  •  •  •

§5343.3  This policy shall be administered by the Building Principal.

§5343.4  This policy will be in effect on a 24-hour basis during the entire school year including weekends, holidays and relevant and recognized summer camps. . . .

The Board of Education, at 22 Pa. Code §12.3, authorizes a school board to make "reasonable and necessary" rules governing the conduct of the students in school. Plaintiffs argue that §§5343.2(b) and 5343.4 of defendant's disciplinary policy are unconstitutional in that they are overly broad. In essence, these rules attempt to regulate a student's conduct "on a 24-hour basis during the entire school year including weekends, holidays and relevant and recognized summer camps. . . ." (Disciplinary policy §5343.4). On this basis, plaintiffs argue, the policy must be struck down as "unreasonable" and hence in deregation of the school board's power to enact "reasonable" regulations regarding student conduct.

Although we must agree that the regulation as it reads is unduly broad and may in fact be well beyond the school board's powers under other factual circumstances,* as applied to the factual situation at

---

*See Axtell v. LaPenna, 323 F. Supp. 1077, 1080 (W.D. Pa. 1971) ("in loco parentis" rule was not "intended to invest the schools with all the authority of parents over their minor children, but only such control as is necessary to prevent infractions of discipline and interference with the educational process.")

bar, we cannot find the policy to be either so broad or unreasonable as to permit our striking it down. Often it is necessary for school officials to regulate a student's activities outside the actual classroom. Each case must be decided upon its own facts. Delisio v. Elwood City Area School District, 70 D.&C.2d 524 (1975).

The court is not to act as a "super school board" with knowledge superior to that of public school administrators, Commonwealth v. Hall, ____ Pa. Super. ____, ____, 445 A.2d 674, 676 (1983), citing McCoy v. Lincoln Intermediate Unit No. 12, 38 Pa. Commw. 29, 36, 391 A.2d 1119, 1123 (1978) cert. denied, 441 U.S. 923 (1979), and cannot, absent a gross abuse of discretion, substitute its own judgment for that of the school districts. Hall, supra, at ____, 445 A.2d 677. See Katzman v. Cumberland Valley School Board of Directors, No. 571 Civil 1983 (Cumb. filed June 10, 1983).

A school policy against alcohol consumption cannot be considered an unreasonable use of discretion. A ban on alcohol consumption is unquestionably a reasonable disciplinary rule to apply to students at any time they are involved in school activities or are under school supervision. Addressing a similar ban on a student's use or possession of marijuana, and citing Appeal of Marple. Newtown School District, 27 Pa. Commw. 588, 367 A.2d 399 (1976) as precedent, the court in Abremski, supra, recognized a school board's power to promulgate disciplinary sanctions for drug-related activities. "Such activities clearly constitute a serious breach of discipline regardless of their non-violent nature." Id. at 296, 412 A.2d at 488. A ban on alcohol consumption is reasonable in that it seeks to avoid disturbances which may interfere with the educational

process and protect the health and safety of the students. See In Re; Feutchenberger, 24 Cumb. L.J. 31, 35 (1973).

The facts of this case indicate that the students were on the school premises immediately following their consumption of a bottle of wine. Scott was intoxicated to the extent of needing assistance to walk to the school where he became physically ill. The fact that the alcohol was actually consumed away from the school does not alter the fact that the boys had recently consumed the alcohol, and Scott was under the influence of alcohol when they arrived on the school grounds for a school sponsored dance. It is well within the school board's discretion to promulgate and enforce sanctions for such behavior in order to maintain the discipline and welfare of students in their charge at school functions. We cannot say that an abuse of that discretion took place in enforcing the drinking policy in the present situation.

Moreover, the exclusion of the plaintiffs from extracurricular activities is not a deprivation of their right to an education. It has been repeatedly held that participation in athletics is not a constitutional or property right, but a "mere 'privilege,' " Trofimuk v. Pennsylvania Interscholastic Athletic Association, 7 D.&C.3d 712, 715 (1978), and the possibility of acquiring an athletic scholarship is but a "speculative possibility" presenting a claim of "questionable urgency." Id. Addressing the property interest in receiving an education recognized in Goss v. Lopez, 419 U.S. 565 (975) as it relates to sporting events, the court in Dallam v. Cumberland Valley School District, 391 F. Supp. 358 (M.D. Pa. 1975) stated:

It seems to us that the property interest in education created by the state is participation in the entire

process. The myriad of activities which combine to form that educational process cannot be dissected to create hundreds of separate property rights, each cognizable under the Constitution. Otherwise, removal from a particular class, dismissal from an athletic team, a club or any extracurricular activity, would each require ultimate satisfaction of procedural due process.

We do not read Goss as creating an avenue of judicial intervention into the basic, daily discretionary activities of the public schools. . . . Id. at 361. See also Adamek v. P.I.A.A., 57 Pa. Commw. 261, 426 A.2d 1206 (1981).

The one year extracurricular suspension, albeit a harsh sanction, is not an unreasonable one. The school board obviously regards the consumption of alcohol as a serious problem that can be combatted only by a strict penalty. The court is in no position to substitute its own judgment upon that point. Accordingly, the plaintiffs' request for a permanent injunction must be denied, as well as their request to have the school board's policy declared unconstitutional.

## DECREE NISI

And now, this August 16, 1983, for the reasons appearing above, it is ordered, adjudged and decreed that plaintiffs' request for a permanent injunction is hereby denied.

Exceptions may be filed by either party to the decree nisi within ten days after notice by the prothonotary. If no exceptions are filed, upon praecipe, the prothonotary shall enter the decree nisi as the final decree.