**Teresa Lynn MOORE and her father and next friend Daniel Moore, Plaintiffs,**

**v.**

**Neil HYCHE, individually and as Superintendent of Instruction of the Tuscaloosa County Board of Education; Bobby Walker, individually and as Principal of Tuscaloosa County High School; Faye Leavelle, individually and as the Sponsor of the Tuscaloosa County High School Beta Club, Defendants.**

**Civ. A. No. 90–G–1057–W.**

United States District Court, N.D. Alabama, W.D.

April 10, 1991.

Jim Sears, Sears & Miles, Tuscaloosa, Ala., for plaintiffs.

Raymond Edward Ward and Martin Ray, Ray, Oliver & Ward, Tuscaloosa, Ala., for defendants.

MEMORANDUM OPINION

GUIN, Senior District Judge.

This suit is brought by Teresa Lynn Moore, a student at Tuscaloosa County High School, and by her father, Daniel

Moore, under 20 U.S.C.A. § 1232g, 20 U.S.C.A. § 1232g(b)(1)(H), 42 U.S.C.A. § 1983, and 42 U.S.C.A. § 1985. At issue is whether the plaintiff Teresa Lynn Moore has a property interest in membership in the Tuscaloosa County High School Beta Club. Plaintiffs' claims are based on an alleged violation of a constitutional right to due process and to the denial of rights under the Family Educational Rights and Privacy Act of 1974.

Tuscaloosa County High School [hereinafter TCHS] is a part of the Tuscaloosa County School System, administered by the Tuscaloosa County Board of Education. TCHS sponsors a local chapter of the National Honorary Beta Club and has done so for many years. Defendant Faye Leavelle has been sponsor of the chapter for 16 or 17 years, having been appointed by a former principal and reappointed by Bobby Walker, the current principal.

In accordance with the authority granted by the National Honorary Beta Club By-Laws, TCHS adopted its own constitution. The TCHS constitution sets forth membership criteria requiring both a 3.0 grade point average and a 3.0 faculty evaluation score. The two scores are not averaged. These criteria have remained constant for the last 17 years.

In the spring of 1990 Teresa Lynn Moore applied for membership in the TCHS Beta Club. After checking the grade point average of all applicants, Mrs. Leavelle included Miss Moore's name, as well as the names of other eligible applicants, on a faculty evaluation sheet. The evaluation sheet was distributed to each member of the faculty to evaluate each applicant in the areas of Character and Attitude, Service, and Leadership. The evaluation scale

was as follows: 4–Superior; 3–Above Average; 2–Average; 1–Below Average.

At the next faculty meeting Mrs. Leavelle indicated that the faculty should evaluate those students they knew well enough to evaluate. Ten faculty members evaluated Teresa Lynn Moore. The plaintiff's scores averaged 2.9.[1]

By letter of March 16, 1990, Mrs. Leavelle notified Miss Moore that her application for membership had not been accepted. When Mr. and Mrs. Moore went to the school to question the decision Mrs. Leavelle explained the procedure used to select membership. She did not release the actual evaluation sheets for their inspection[2] because they contained the names and scores of other students who had applied.[3] She did compile the actual raw scores and give them to Mr. and Mrs. Moore. That compilation supplied the necessary data without disclosing privileged information on other students.

There is no evidence that plaintiff's application was treated any differently from the applications of other students.

■ To prove their claims of violations of constitutional rights to due process and denial of rights under the Family Educational Rights and Privacy Act plaintiffs must show Teresa Lynn Moore had a legitimate entitlement to a protected property or liberty interest in membership in the TCHS Beta Club. *See, Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972) ("A person must have more than an abstract need or desire for [election to membership]. He must, instead, have a legitimate claim of entitlement to it."). Plaintiffs failed to show a legitimate claim of entitlement.

---

**1.** Miss Moore was admitted to membership in the TCHS Honor Society at about the same time with a faculty rating of 3.22.

**2.** The plaintiffs claim that Mrs. Leavelle's refusal to let them see the actual sheets is a violation of 20 U.S.C.A. § 1232g. and 20 U.S.C.A. § 1232g(b)(1)(H) of the Family Educational Rights and Privacy Act of 1974. They fail to appreciate that Mrs. Leavelle's refusal to make the list available protected the privacy of all other students whose names were on the list.

**3.** One other student did not qualify for membership. It is significant to note that during the time Mrs. Leavelle has served as faculty advisor no applicant has ever been admitted to Beta Club membership with anything less than a 3.0 faculty evaluation. The criteria have been applied equally to all applicants. Furthermore, there is nothing to prevent Miss Moore from applying for membership in the TCHS Beta Club during the 1990–1991 school year.

In *Price v. Young,* 580 F.Supp. 1 (E.D. Ark.1983), a father brought a similar action asserting claims under the civil rights statute and the Family Educational Rights and Privacy Act of 1974. The *Price* claim arose out of the Russellville High School's rejection of Kevin Price for inclusion in the National Honor Society. As in the case at bar faculty evaluation sheets barred his admission. The court held there was no private right of action under 20 U.S.C. § 1232, citing *Girardier v. Webster College,* 563 F.2d 1267, 1277 (8th Cir.1977).[4] The court held the following:

> Membership in the National Honor Society does not give rise to a property interest which entitles one to due process of law. *See, e.g., Dallam v. Cumberland Valley School District,* 391 F.Supp. 358, 361 (M.D.Pa.1975). *See also, Arundar v. Dekalb City School District,* 620 F.2d 493 (5th Cir.1980). Plaintiff has asserted no infringed liberty interest. *Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976); *Hebert v. Ventetuolo,* 638 F.2d 5 (1st Cir.1981).

*Price* at 2.

Similarly, in *Karnstein v. Pewaukee School Board,* 557 F.Supp. 565 (E.D.Wis. 1983), the court held that an applicant for membership in the National Honor Society had no constitutionally protected liberty or property interest in election to the society. In denying the claim the court stated the following about selection to membership in the National Honor Society:

> Young Karnstein had no "entitlement" to election to the NHS. Selection is a mere "honor" no different, except in degree, from such things as being picked to star in the school play or being named to serve as captain of the basketball team.
>
> Even were an entitlement found, it is difficult to accept the argument that the due process clause of the constitution would be offended by what has occurred here. As we know, the requirements of due process vary depending on the situation. ... What due process merely requires is fair treatment under the circumstances.

*Id.* at 567.

■ Teresa Lynn Moore was afforded "fair treatment under the circumstances." All applicants were subjected to the same procedure for membership. Since she had no entitlement to membership in the TCHS Beta Club the court holds that no cause of action lies against any of the defendants.[5] Teresa Lynn Moore has no liberty or property interest in membership in the TCHS Beta Club. The court further holds that her father Daniel Moore has no private right of action under 20 U.S.C. § 1232g.

For the reasons set forth in this memorandum opinion, the court grants summary judgment to all defendants.

---

**4.** *See, Langston v. ACT,* 890 F.2d 380, 387 n. 12 (11th Cir.1989).

**5.** The actions of the education officials were taken in good faith and are covered by qualified or good faith immunity. *See, Owen v. City of Independence,* 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980), *reh'g denied,* 446 U.S. 993, 100 S.Ct. 2979, 64 L.Ed.2d 850 (1980); *Wood v.*

*Strickland,* 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975), *reh'g denied,* 421 U.S. 921, 95 S.Ct. 1589, 43 L.Ed.2d 790 (1975) (Actions taken by school officials in good faith fulfillment of their responsibilities and within the bounds of reason under all the circumstances are covered by good faith immunity.).