**Tom JEFFREY, Traci Jeffrey and Jessica Jeffrey, Plaintiffs,**

v.

**BOARD OF TRUSTEES OF the BELLS ISD, et al., Defendants.**

**No. 4:02–CV–124.**

United States District Court, E.D. Texas, Sherman Division.

May 12, 2003.

Kelly Ray Bickerstaff, Robert T. Jarvis, Sherman, TX, for Plaintiffs.

Roger Dean Hepworth, of Henslee, Fowler, Hepworth & Schwartz, LLP, Austin, TX, Thomas Phillip Brandt, of Fanning, Harper, & Martinson, Dallas, TX, for Defendants.

## MEMORANDUM OPINION AND ORDER

DAVIS, District Judge.

Defendants Joe Moore ("Mr. Moore"), Ray Smith, Don Dexheimer, Randy Workman, E.T. Pettit, Jim Adlof, Brian Haase, Brent Adams, Billy Neal, Jr. (collectively "Board Members"), and the Board of Trustees of the Bells Independent School District ("Bell's ISD") (collectively "Defendants") have filed a Motion for Summary Judgment (Docket Nos. 69, 70, 71, & 21). For the reasons articulated below, the Court finds that Defendants' Motions for Summary Judgment should be **GRANTED**.

### BACKGROUND

This case involves a competition for valedictorian of the 2002 senior class at Bells High School. At the beginning of their senior year of high school, the Fall of 2001, Vanessa Novak ("Ms.Novak") was in first place in the race for valedictorian and Jessica Jeffrey ("Ms.Jeffrey") was in second place. The controversy at issue all began in late March or mid-April 2001. At this time, Bells ISD handed out class choice sheets to students advising them of classes that would be offered in the Fall of 2001. One of the classes offered was Spanish III.[1] Four students, including Ms. Novak elected Spanish III. Ms. Jeffrey did not select Spanish III.

---

1. The Spanish III class was not offered to the entire student population. Presumably, be-cause only students who complete Spanish II are eligible for Spanish III.

In late May 2001, the Bells High School's Spanish teacher resigned and the Bells ISD began a search to find a replacement. At the time of the students pre-enrollment on August 7, 2001, Bells ISD had not found a Spanish teacher. The four students who had selected Spanish III were asked if they would consider taking Spanish III via satellite at Grayson County Community College or by a correspondence course. Three of the four students indicated that they were no longer interested in taking the Spanish III class. Ms. Novak indicated that she still wanted to take the Spanish III class in order to graduate with a Distinguished Achievement Program seal on her diploma. Before school started, but after the pre-enrollment, Bells ISD hired Mary Ann Lesch ("Ms.Lesch") as the Spanish teacher. Ms. Lesch began teaching on August 15, 2001. On August 28, 2001, after the school year began, Mr. Moore, principal of Bells High School, spoke with Ms. Lesch regarding the Spanish III class. Ms. Lesch indicated that she would be willing to teach the class even if only one student, Ms. Novak, enrolled.

Mr. Moore, once it was determined that Spanish III would be offered to Ms. Novak, and knowing that Ms. Jeffrey was in competition for valedictorian, informed Ms. Jeffrey that a Spanish III class was being offered to Ms. Novak and it would be a weighted grade class, meaning extra points could be earned. Mr. Moore wanted to give Ms. Jeffrey the chance to register for the Spanish III class, even though she had not pre-enrolled for the class.[2]

In order to determine what period Spanish III would be offered, Mr. Moore reviewed the class schedules of Ms. Jeffrey, Ms. Novak, and Ms. Lesch. Ms. Lesch was available to teach Spanish III at either second or third period. Neither Ms. Jeffrey nor Ms. Novak were available at those times because they were taking advanced level courses. However, Ms. Jeffrey and Ms. Novak had an elective class scheduled at fourth period. Ms. Novak's elective was yearbook and Ms. Jeffrey's elective was agricultural science. Mr. Moore decided that the most reasonable time to offer the Spanish III class was at fourth period. In order to take Spanish III, Ms. Jeffrey and Ms. Novak would have to drop their elective class. Since the teacher was not present to teach the class at the time it was offered,[3] Plaintiffs argue that the specific hour the class was offered was arbitrary and, further, advantageous to Ms. Novak because her elective did not count toward her grade point average, while Ms. Jeffrey's did.

Mr. Moore was aware that Ms. Jeffrey was an accomplished agricultural student and was eligible for a potential scholarship upon graduation. Ms. Jeffrey was concerned that if she dropped the agricultural science class she would not be eligible for the agricultural scholarship. In order to accommodate Ms. Jeffrey, Mr. Moore allowed Ms. Jeffrey to move her agricultural

---

**2.** Apparently, Mr. Moore and Ms. Jeffrey's parents did not get along. Ms. Jeffrey's parents allege that Mr. Moore had threatened to deprive Ms. Jeffrey of any chance of becoming class valedictorian if the parents failed to halt their complaints regarding their other daughter. Apparently, an English teacher at Bells High School was aggravating their other daughter's depression and social anxiety and a physician recommended that the daughter be removed from the English class. Mr. Moore, at first, refused to remove the daugh-

ter from the English class. Eventually, Mr. Moore removed the daughter from the English class for the last two weeks of the Fall 2000 semester, but stated that he would not allow the situation to continue.

**3.** Apparently, the Spanish III students were given assignments by Ms. Lesch and periodically met with her, even though she was not available to teach the class during the fourth period.

science class from fourth period to zero hour (7:30 a.m.). Ms. Jeffrey requested that the Spanish III class be moved to another period beside the fourth period. Her request was denied. On August 22, 2001, Ms. Jeffrey moved her agricultural class from fourth period to zero hour and added Spanish III at fourth period. Ms. Novak dropped her yearbook class and added Spanish III at fourth period.

In early September 2001, Tom and Traci Jeffrey (hereinafter "Ms. Jeffrey's parents"), contacted Mr. Moore about the Spanish III class. A Level I conference was conducted by telephone. Ms. Jeffrey's parents complained that the Spanish III class should·not be offered after the start of the school year to one student and to do so would be unfair to Ms. Jeffrey. The Plaintiffs contended that (1) the Spanish III was not a required class, (2) the Spanish III was not on the schedule at the beginning of the school year, (3) the addition of this course after the school year began place "unfair" and "unreasonable" restrictions on Ms. Jeffrey's curriculum. Ms. Jeffrey's parents requested that the Spanish III class not be offered and Mr. Moore denied their request. Ms. Jeffrey's parents appealed the decision to Superintendent Jon Whittemore ("Mr. Whittemore"). A level II hearing was conducted before Mr. Whittemore and he upheld Mr. Moore's decision. Mr. Whittemore acknowledged that Bells ISD has a policy, practice or custom of making ad hoc decisions which afford specific students special arrangements where necessary in the best interest of the student and the school. Ms. Jeffrey's parents appealed this decision to the Board of Trustees and requested a Level III hearing.

On September 17, 2001, a Level III hearing was conducted before the Board of Trustees. At the hearing, Ms. Jeffrey's parents wanted to discuss, in addition to the Spanish III class, generalized allegations of inequitable decisions of the Bells ISD and wanted to cross-examine witnesses. The Board of Trustees informed Ms. Jeffrey's parents that the Level III hearing would be limited to their complaints raised at the Level I and II hearings relating to the offering of the Spanish III class and that they would not be allowed to cross-examine witnesses. Ms. Jeffrey's parents disagreed with this decision and asked for a continuance to consider the alleged ad hoc rule and procedures regarding the Level III hearing. This request was denied and Ms. Jeffrey's parents decided to leave the Level III hearing without presenting any testimony or evidence regarding their opposition to the Spanish III class. The Board Members voted that Ms. Jeffrey's parents had withdrawn their appeal and denied their request to remove the Spanish III class from the Bells High School curriculum.

On September 18, 2001, Ms. Jeffrey dropped Spanish III and moved her agricultural class back to fourth period. Ms. Jeffrey contends that she dropped the Spanish III class once it became apparent that her agricultural class could not effectively continue as a single student class at the zero hour. At the end of the 2001–2002 school year, Ms. Novak's grade point average was the highest among the senior class and she was selected valedictorian.[4]

On April 15, 2002, Ms. Jeffrey and her parents (collectively "Plaintiffs") filed this lawsuit in the 15th Judicial District Court,

4. The valedictorian of Bells High School is determined after the completion of the fifth six weeks grading period of the senior year. Bells High School takes the average of the fourth and fifth six weeks grading period of a student to determine the final semester grades of the student. A student's final grade point average is calculated at the end of the fifth six weeks period of the senior year. Ms. Novak's final grade point average, without including the Spanish III class, was greater than Ms. Jeffrey's final grade point average.

Grayson County, Texas. The case was removed to this Court on April 25, 2002. Plaintiffs allege that Defendants have violated Plaintiffs' procedural and substantive due process and equal protection rights protected by the Fifth and Fourteenth Amendments of the U.S. Constitution and article 1, sections 3, 19, and 20 of the Texas Constitution pursuant to 42 U.S.C. § 1983.

Defendants have moved for summary judgment on all of Plaintiffs' claims. In particular, Defendants argue that they are entitled to summary judgment because (1) Plaintiffs have failed to allege a constitutional infringement and (2) Defendants are entitled to official, qualified, and educator immunity. Since the Court finds that Plaintiffs have failed to state a constitutional violation as a matter of law, the Court will not address Defendants' immunity arguments.

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R.CIV.P. 56(c). The moving party bears the initial burden of "informing the Court of the basis of its motion" and identifying those portions of the record "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Once the moving party meets its burden, the nonmoving party must "go beyond the pleadings" and designate "spe-

cific facts" in the record "showing that there is a genuine issue for trial." *Id.* at 324, 106 S.Ct. 2548. An issue is "genuine" if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–49, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A failure on the part of the nonmoving party to offer proof concerning an essential element of its case necessarily renders all other facts immaterial and mandates a finding that no genuine issue of fact exists. *Saunders v. Michelin Tire Corp.*, 942 F.2d 299, 301 (5th Cir.1991).

The primary inquiry here is whether the material facts present a sufficient disagreement as to require a trial, or whether the facts are sufficiently one-sided that one party should prevail as a matter of law. *Anderson*, 477 U.S. at 251–52, 106 S.Ct. 2505. The substantive law of the case identifies which facts are material. *Id.* at 248, 106 S.Ct. 2505. Only disputed facts potentially affecting the outcome of the suit under the substantive law preclude the entry of a summary judgment. *Id.* Mere conclusory allegations, unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir.1996); *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir.1994).

## DUE PROCESS

The Fourteenth Amendment to the United States Constitution provides, in pertinent part, that no state may "deprive any person of life, liberty, or property, without due process of law." U.S. CONST. amend XIV. The Due Process Clause contains both a procedural and a substantive component. *See, e.g., United States v. Salerno*, 481 U.S. 739, 746, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987) (analyzing the Due

Process Clause of the Fifth Amendment). Substantive due process "prevents the government from engaging in conduct that shocks the conscience ... or interferes with rights implicit in the concept of ordered liberty...." *Id.* (internal quotation marks and citations omitted). Procedural due process requires that the government's deprivation of life, liberty, or property, even if consistent with substantive due process, "be implemented in a fair manner." *Id.* (internal quotation marks and citation omitted). The Court will analyze Plaintiffs' procedural and substantive due process claim in turn.

### i. *Procedural Due Process*

Plaintiffs claim that Defendants violated their United States and Texas constitutional right to procedural due process.[5] Plaintiffs argue that they were not advised of any rules or requirements for a Level III hearing and, further, the Board of Trustees adopted or implemented rules which denied Plaintiffs the opportunity to effective participate in the hearing. Specifically, Plaintiffs contend that they were not allowed to confront and question witnesses and were not permitted to present prior inconsistent decisions by school administrators.

Defendants argue that participation in a high school Spanish III class does not constitute a constitutionally protected liberty or property interest, entitling Plaintiffs to procedural due process. Ms. Jeffrey's parents, on the other hand, argue

that they have a fundamental liberty interest in the right to direct the education of their children. Further, Ms. Jeffrey argues she has a property interest in taking a Spanish III class. Therefore, according to Plaintiffs, participation in Spanish III fell within Ms. Jeffrey's right to public education, entitling her to full procedural due process protections.

A student's and her parents § 1983 claims against the school and its officials can survive only if their underlying constitutional rights are abridged. *See Wood v. Strickland,* 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975). As the Supreme Court in *Wood* stated:

> [Section] 1983 does not extend the right to relitigate in federal court evidentiary questions arising in school disciplinary proceedings or the proper construction of school regulations. The system of public education has evolved in this Nation relies necessarily upon the discretion and judgment of school administrators and school board members and § 1983 was not intended to be a vehicle for federal-court correction of errors in the exercise of that discretion which do not rise to the level of violations of specific constitutional guarantees.

*Id.* at 326, 95 S.Ct. 992. Accordingly, the dispositive question in this case is whether, as a matter of law, the Plaintiffs were denied a specific constitutional guarantee.

The deprivation of a liberty or property interest is fundamental to both substantive

---

5. Specifically, Plaintiffs allege that:
   [T]he procedural due process afforded them was perverted by the individual defendants intentional, if not malicious, disregard for the rights of plaintiffs. Despite no prior rules and policies for the Level III hearing before the Board, rule and policies were implemented without notice for the sole specific purpose of depriving the plaintiffs of [a] fair opportunity to be heard and thus denying them the procedural due process

protections required by the United States and Texas Constitutions.
   Further, Plaintiffs allege that they "did not receive [a] reasonable opportunity to prepare for and meet the requirements and rules of the School Board of the Bells Independent School District for Level III hearings ... [and][a]t no time, ... had an opportunity to confront and question witnesses or persons with knowledge of relevant facts."

and procedural due process claims. *See, e.g., Board of Regents v. Roth,* 408 U.S. 564, 570–71, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972) (explaining that to determine if procedural due process requirements apply, a court must "look to see if the interest is within the Fourteenth Amendment's protection of liberty and property"). Thus, before one is entitled to due process, a liberty or property interest must be identified. In order to have "a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement." *Id.* at 577, 92 S.Ct. 2701.

### a. Property Interest

■ Education, standing alone, although of unquestioned importance, has not been recognized as a fundamental right arising directly under the federal constitution. *San Antonio Indep. Sch. Dist. v. Rodriguez,* 411 U.S. 1, 35, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973). The same is true regarding the Texas constitution. *Kirby v. Edgewood Indep. Sch. Dist.,* 761 S.W.2d 859, 863–864 (Tex. Ct.App.-Austin 1988), *rev'd on other grounds,* 777 S.W.2d 391 (Tex.1989) ("This court concludes that education, although vital, does not rise to the same level as the right to engage in freedom of speech or to exercise religion free of governmental interference, both rights which have long been recognized as fundamental and entitled to protection under both the federal and state constitutions.... [T]he district court erred in con-

cluding that education is a 'fundamental' right"). In essence, there is no constitutional right to the best education possible.[6]

Plaintiffs argue that once the state endeavors to provide educational opportunities, it must do so on equal terms. *See Plyler v. Doe,* 457 U.S. 202, 221–23, 102 S.Ct. 2382, 72 L.Ed.2d 786 (1982). Thus, the Plaintiffs contend that the rules and polices of Bells ISD have been applied inconsistently and unequally to Ms. Jeffrey to her detriment and she has been denied the right to compete equally for class valedictorian.[7] Under Texas state law, Plaintiff is entitled to a free public education and unless otherwise exempt, school attendance is compulsory. *See* TEX. EDUC.CODE ANN. § 4.001 (explaining mission statement and goals for equal access to public education); § 25.001 (providing for admission to public schools); § 25.085 (providing for compulsory school attendance) (Vernon 1996 & Supp.2002); *Littlefield v. Forney Indep. Sch. Dist.,* 108 F.Supp.2d 681, 688 (N.D.Tex.2000), *aff'd,* 268 F.3d 275 (5th Cir.2001).

In *Goss v. Lopez,* 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975), the Supreme Court determined that a state must "recognize a student's legitimate entitlement to a public education as a property interest which is protected by the Due Process Clause and which may not be taken away for misconduct without adherence to the minimum procedures required by that Clause." *Id.* at 574, 95 S.Ct. 729. The Supreme Court spoke in terms of the total "educational process." *Id.* at 576, 95 S.Ct.

---

**6.** No protected property interest is implicated in a school's denial to offer a student a particular curriculum, absent a state law creating a protected interest in a particular kind of education. *See Nevares v. San Marcos Consol. Independent Sch. Dist.,* 111 F.3d 25, 27 (5th Cir.1997). There is no protected right to receive instruction in any particular course of

study. *See Arundar v. DeKalb County Sch. Dist.,* 620 F.2d 493 (5th Cir.1980).

**7.** The obvious problem with this argument is that Ms. Jeffrey was offered the opportunity to take the Spanish III class, just not at the time that she preferred. Further, Ms. Jeffrey does not have a property interest in becoming class valedictorian.

729. Thus, under *Goss,* the property interest which is protected by the Due Process Clause is the right to participate in the overall educational process, not the right to participate in each individual component of that process. Accordingly, it is only when a student is excluded from the entire educational system that due process must be afforded. Her exclusion from a particular course (or right to take the Spanish III course at a different time) is of no constitutional import.

Plaintiffs have cited no cases which support their position that a student has a protected property interest in participating in a particular class, at a particular time. In fact, numerous courts have rejected this argument. *See, e.g., Seamons v. Snow,* 84 F.3d 1226, 1234–35 (10th Cir.1996) (finding that plaintiff had a constitutionally protected interest in receiving a public education, but he did not have a protected interest in participating in specific advanced placement courses and interscholastic activities); *Dallam v. Cumberland Valley Sch. Dist.,* 391 F.Supp. 358, 361 (M.D.Pa.1975); *Pegram v. Nelson,* 469 F.Supp. 1134, 1140 (M.D.N.C.1979).

As the *Dallam* court aptly stated:
[T]he property interest in education created by the state is participation in the entire process. The myriad activities which combine to form that educational process cannot be dissected to create hundreds of separate property rights, each cognizable under the Constitution. Otherwise, removal form a particular class, dismissal from an athletic team, a club or any extracurricular activity, would each require ultimate satisfaction of procedural due process.
*Dallam,* 391 F.Supp. at 361. Thus, because the property interest that exists is in the entire educational process, there is no constitutional right to any specific class or to have a class offered at a particular time, meriting due process protections. If the

rule were otherwise, every disgruntled student or parent who believes the student's schedule was not accommodated could commence an action in federal court to challenge the decision of the school administrators. This cannot be.

In the instant case, Ms. Jeffrey did not have a protectable property interest in a Spanish III class (or taking a Spanish III class at a particular time). Consequently, no constitutional violation can be established as to Ms. Jeffrey and no process was due Ms. Jeffrey.

#### b. Liberty Interest

■ As the Plaintiffs have correctly pointed out, a long line of Supreme Court cases establishes that parents have a fundamental liberty interest in the right to direct the education and upbringing of their children. *See Meyer v. Nebraska,* 262 U.S. 390, 43 S.Ct. 625, 67 L.Ed. 1042 (1923) (held unconstitutional a state statute that prohibited the teaching of subjects in foreign languages and the teaching of foreign languages to children before the eighth grade, even in a private school); *Pierce v. Society of Sisters,* 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925) (held unconstitutional a statute that required children 8 to 16 to attend a public school); *Wisconsin v. Yoder,* 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972) (high school attendance law unconstitutionally infringed on parents' rights to direct the religious upbringing and education of their children; only those interests of the "highest order" can overcome those parental rights). Doubtless, the Court has no quarrel with these affirmations; however, recognizing or identifying a right is a far cry from defining and setting the parameters of that right.

Plaintiffs seriously misconstrue the import of *Meyer* and *Pierce* which both recognize that the right to privacy encom-

passes some activities of child rearing and education. Nevertheless, those rights are strictly limited. In Meyer, the Supreme Court held that a state statute forbidding the teaching of foreign languages in all schools, including public, private, and parochial, prior to the ninth grade, violated the parents' rights "to control the education of their" children, and offered no reasonable countervailing state interest. 262 U.S. at 397, 43 S.Ct. 625. In *Pierce,* the Court held that a state law compelling children between the ages of eight and sixteen to attend public school up through the eighth grade was unconstitutional because it "unreasonably interferes with the liberty of parents and guardians to direct the upbringing and education of children under their control." 268 U.S. at 534–35, 45 S.Ct. 571.

Plaintiffs' contention, that this limited due process right entitles them to require high school administrator's to offer a particular class, for a particular student, at a particular time (here, Spanish III) is unreasonable and untenable. Parents' right to educational choice for their children is triggered by substantial denials of educational choice of the *Meyer* and *Pierce* variety, not by school administrators' alleged inequitable conduct regarding the offering or scheduling of a particular class. Put simply, Ms. Jeffrey's parents do not have a constitutional right to direct, control, or determine what classes or curriculum the Bells ISD will offer its students.[8] Plaintiffs cannot carve out a component of the educational process, mask it with the trappings of a fundamental right and then elevate that component to the status of a fundamental right. This leads to the unremarkable conclusion that the fundamental right to direct the education of one's child simply does not carry with it the right to control or direct every component of the educational process. Accordingly, no constitutional violation can be established and no process was due Ms. Jeffrey's parents.

As to Plaintiffs' claims for procedural due process violations under the Texas Constitution, the Texas and United States Constitutions are to be construed the same. *See, e.g., Arrington v. County of Dallas,* 970 F.2d 1441, 1447 (5th Cir.1992); *Price v. City of Junction,* 711 F.2d 582, 590 (5th Cir.1983); *Moore v. Port Arthur Independent School District,* 751 F.Supp. 671, 673 (E.D.Tex.1990). Therefore, Plaintiffs' state procedural due process claim fails as well.

### ii. Substantive Due Process

■ Where, as here, the conduct at issue neither implicates a fundamental right nor involves a suspect classification,[9] the challenged conduct need only satisfy the rational basis scrutiny to pass constitutional muster. *See, e.g., Wheeler v. Miller,* 168 F.3d 241, 249–50 (5th Cir.1999). Under the rational basis scrutiny, the state action must serve a legitimate purpose and be rationally related to achieving that purpose. *Id.*

Plaintiffs argue that there is no legitimate purpose of making accommodation

---

8. A case in the Tenth Circuit concerned a similar issue. In *Swanson ex rel. Swanson v. Guthrie Independent School Dist. I–L,* 135 F.3d 694, 699–700 (10th Cir.1998), the court held that a school district's refusal to allow a home-educated child to attend classes part-time did not infringe on the parents' right to direct their child's education. The court went on to hold that parents had no constitutional right "to send their children to public school on a part-time basis, and to pick and choose which courses their children will take from the public school." *Id.* at 700; *see also Hooks v. Clark County School Dist.,* 228 F.3d 1036 (9th Cir.2000) (a family does not have the right to "pick and choose" the services offered by the school district).

9. Plaintiffs admit that this case does not involve a suspect classification.

to one student when to do so gives the student an undue advantage in the competition to be named class valedictorian, without likewise making the same accommodations to other similarly situated students. Plaintiffs complain the problem with Bells ISD's policy and practice of providing ad hoc accommodations for particular students is the completely arbitrary nature in which the students are accommodated.[10] The Court disagrees.

Ms. Jeffrey was not precluded or excluded from taking Spanish III or any other course offered by Bells ISD. She chose to drop the Spanish III class. The evidence abundantly shows that Ms. Jeffrey was more than accommodated. In fact, the school went out its way for Ms. Jeffrey by allowing her to rearrange her schedule. Mr. Moore weighed his options and chose to schedule the Spanish III class during fourth period-an elective period for Ms. Novak and Ms. Jeffrey. He further allowed Ms. Jeffrey to move her fourth period elective, agricultural science, to zero hour so that Ms. Jeffrey could take Spanish III.

Plaintiffs requested that the Spanish III class be removed from the curriculum. It was determined by appropriate school officials that the Spanish III class should be offered to the one student who wanted to take the class because Spanish III is a required class for students wishing to graduate with a Distinguished Achievement Program seal on their diploma and is a class required to be offered by Texas Administrative Code. *See* TEX. ADMIN. CODE ANN § 74.3(b)(2)(J)—Description of a Required Secondary Curriculum.[11] Thus, the school administrator's decision to offer the Spanish III class at fourth period, to one student, is rationally related to a legitimate pedagogical purpose.

Additionally, "[i]t is not the role of the federal courts to set aside decisions of school administrators which the court may view as lacking a basis in wisdom or compassion." *Wood,* 420 U.S. at 326, 95 S.Ct. 992. Local school boards have broad discretion in the management of school affairs. Federal courts should not ordinarily intervene in the resolution of conflicts which arise in the daily operation of school systems. *Cf. Mitchell v. Board of Trustees of Oxford Municipal Separate Sch. Dist.,* 625 F.2d 660, 664 (5th Cir.1980) ("school disciplinary matters are best resolved in the local community and within the school system").

## EQUAL PROTECTION

■ Plaintiffs argue that the conduct of the Defendants deprived Ms. Jeffrey of the opportunity to compete equally for class ranking, specifically, class valedictorian. Plaintiffs allege that the rule and policies of the Bells ISD have been applied inconsistently and unequally to Ms. Jeffrey's detriment and in violation of her constitutional rights as provided in the

---

**10.** Ms. Jeffrey's parents cite to the fact that their other daughter was not accommodated for her disabilities. The Bells ISD superintendent refused to allow a single student English II class for their other daughter.

**11.** Section 74.3(b)(2)(J) provides, in relevant part:

    (b) Secondary Grades 9–12.

       \* \* \*

    (2) The school district must offer the courses listed in this paragraph and maintain evidence that students have the opportunity to take these courses:

       \* \* \*

    (J) languages other than English—Levels I, II, and III of the same language.

Fourteenth Amendment to the United States Constitution and Article I, Section 3, of the Texas Constitution.

The Equal Protection Clause of the 14th Amendment to the United States Constitution provides that "[n]o State shall ... deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. The essence of the Equal Protection Clause is that similarly situated people be treated alike. *See, e.g., Plyler v. Doe,* 457 U.S. 202–216, 102 S.Ct. 2382, 72 L.Ed.2d 786 (1982).

Plaintiffs contend that since a fundamental right is implicated, the Court must apply strict scrutiny standard of review to their equal protection claim. Defendants, on the other hand, contend that no fundamental right is involved and urge the Court to apply the rational-basis standard of review.

The Fifth Circuit has described strict scrutiny as follows:

> If a classification disadvantages a "suspect class" or impinges upon a "fundamental right," the ordinance [or rule] is subject to strict scrutiny. Under the strict scrutiny standard, we accord the classification no presumption of constitutionality. Instead, we ask whether the classification promotes a compelling governmental interest and, if so, whether the ordinance [rule] is narrowly tailored such that there are no less restrictive means available to effectuate the desired end.

*Qutb v. Strauss,* 11 F.3d 488, 492 (5th Cir.1993), *cert. denied,* 511 U.S. 1127, 114 S.Ct. 2134, 128 L.Ed.2d 864 (1994) (citations omitted). Classifications based on race, national origin, or alienage are suspect categories and subject to strict scrutiny. *See Cleburne v. Cleburne Living Ctr.,* 473 U.S. 432, 440, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985). Further, a right is considered fundamental if it "has its source, explicitly or implicitly," in the Con-

stitution. *Plyler,* 457 U.S. at 217 n. 15, 102 S.Ct. 2382.

Plaintiffs are not a suspect class and, as stated above, no fundamental right has been impinged. Accordingly, the Court will apply the rational-basis analysis. Based on the rational-basis analysis, the legislation or official action "is presumed to be valid and will be sustained if the classification drawn by the statute [or official action] is rationally related to a legitimate state interest." *Cleburne,* 473 U.S. at 440, 105 S.Ct. 3249. Under the rational-basis test, the official decisionmaker that established the classification or category need not "actually articulate at any time the purpose or rationale supporting its classification." *Nordlinger v. Hahn,* 505 U.S. 1, 15, 112 S.Ct. 2326, 120 L.Ed.2d 1 (1992). "Instead, a classification must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *Heller v. Doe,* 509 U.S. 312, 320, 113 S.Ct. 2637, 125 L.Ed.2d 257 (1993) (internal quotation marks and citations omitted). Further, the state has no obligation "to produce evidence to sustain the rationality of a statutory [or rule] classification." *Id.* Under rational-basis review, a court must "accept a legislature's [or official decisionmaker] generalizations even when there is an imperfect fit between the means and ends. A classification does not fail rational-basis review because it is not made with mathematical nicety or because in practice it results in some inequality." *FCC v. Beach Communications, Inc.,* 508 U.S. 307, 321, 113 S.Ct. 2096, 124 L.Ed.2d 211 (1993) (internal quotation marks and citations omitted). Thus, in sum, a classification will be upheld if there is a rational relationship between a legitimate state interest.

For the same reasons that Defendants' conduct passes scrutiny under a substan-

tive due process analysis, it also survives rational basis equal protection scrutiny. Accordingly, Plaintiffs' federal constitutional equal protection claim fails as a matter of law.

Equal protection challenges under the Texas Constitution are analyzed in the same manner as equal protection claims under the Federal Constitution. *See, e.g., Reid v. Rolling Fork Public Util. Dist.,* 979 F.2d 1084, 1089 (5th Cir.1992); *Spring Branch Indep. Sch. Dist. v. Stamos,* 695 S.W.2d 556, 559 (Tex.1985). Accordingly, Plaintiffs' state equal protection constitutional claim fails as well.

## CONCLUSION

For the reasons articulated above, the Court finds that Defendants' Motions for Summary Judgment should be **GRANTED.**

**IT IS SO ORDERED.**