BYE, Circuit Judge,
dissenting.
In my view, B.K. has not demonstrated a likelihood of success on the merits nor a threat of irreparable harm. I would reverse the decision of the district court and vacate the preliminary injunction.
B.K. has not demonstrated a fair chance of prevailing on the merits of her procedural due process claim because she was not deprived of a protected liberty or property interest. The primary injury alleged by B.K. is the harm to her reputation for honesty and integrity. Yet, an individual’s reputation, alone, is not a protected liberty or property interest. Neal v. Fields, 429 F.3d 1165, 1167 (8th Cir.2005) (citing Siegert v. Gilley, 500 U.S. 226, 233-34, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991)). It must be coupled with the deprivation of a “right or status previously recognized by state law.” Paul v. Davis, 424 U.S. 693, 711-12, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976). The majority concludes participation in the 4-H organization and its livestock competitions is a recognized right or status because it is important to B.K.’s education and career development.
Defendants logically argued participation in 4-H activities is no more constitutionally protected than participation in interscholastic athletics. Extensive case *823 law supports such position. See Doe v. Silsbee, 402 Fed.Appx. 852, 854 (5th Cir.2010) (holding student had no liberty or property interest in participating in cheer-leading squad); Angstadt v. Midd-West Sch. Dist., 377 F.3d 338, 344 (3d Cir.2004) (holding student had no liberty or property interest in participating in interscholastic athletics); Brindisi v. Regano, 20 Fed.Appx. 508, 511 (6th Cir.2001) (same). However, the majority rejects this argument, concluding the analogy to high school athletics “is not apt and the governing principles far from clear.” Ante at 820. The majority ignores this case law, concluding a single district court case from 1972, Behagen v. Intercollegiate Conference of Faculty Representatives, 346 F.Supp. 602 (D.Minn.1972), which involved a ban from college athletics, is more analogous because the activity had a “potential to bring [participants] great economic rewards.” Ante at 820. The majority’s reasoning relies on this lone district court case even though multiple circuits have held college students do not have a protected liberty or property interest in intercollegiate athletics. See Equity in Athletics, Inc. v. Dep’t of Educ., 639 F.3d 91, 109 (4th Cir.2011) (“[T]he interest of the student athletes in participating in intercollegiate sports was not constitutionally protected”); Miami Univ. Wrestling Club v. Miami Univ., 302 F.3d 608, 615 (6th Cir.2002) (“There is no constitutional right to participate in intercollegiate athletics.”); Colo. Seminary v. Nat’l Collegiate Athletic Ass’n, 570 F.2d 320, 321 (10th Cir.1978) (same). These cases, and those offered by Defendants, demonstrate the aptness of the analogy and the clarity of the governing principles in this area.
I also note Behagen appears to have based its ruling on an erroneous belief that the law in 1972 was evolving towards recognizing a protected interest in intercollegiate athletics. In the sentence immediately preceding the one quoted by the majority, Behagen stated, “[i]t has also been held that high school students’ interests in participation in athletics are so substantial that they cannot be impaired without proceedings which comply with minimum standards of due process.” 346 F.Supp. at 604. The relevant case law did not evolve in the direction Behagen anticipated, so reliance on Behagen underscores the deficiency of the majority’s reasoning.
The majority suggests 4-H differs from high school athletics because “4-H participation, unlike most high school athletics, is a career-oriented program.” Ante at 820. First, the majority fails to acknowledge the thousands of high school athletes who vie for and receive collegiate scholarships, which undoubtedly have a significant impact on those students’ “future economic interests” and career development. It is unclear to me how the opportunity to compete for an athletics scholarship differs from the opportunity to compete for prize money from livestock shows, especially when, as the majority notes, B.K. plans to use the prize money for college. A college scholarship would undoubtedly affect a high school student’s career path.
Further, the majority fails to reconcile its position with the numerous other extracurricular activities which also are career oriented and important to one’s education but nevertheless have been held to not constitute protected interests. See Lowe v. City of Shelton, 128 Fed.Appx. 813, 814 (2d Cir.2005) (holding high school student did not have a protected property interest in creating an official jazz club at school); Seamons v. Snow, 84 F.3d 1226, 1234-35 (10th Cir.1996) (holding student did not have constitutional right to participate in sports, to take advanced placement classes, or to attend a particular school); Poling v. Murphy, 872 F.2d 757, 764 (6th Cir.1989) (holding student had no protected interest *824 in participating in student council election even though it was customary to award a college scholarship to the council president). I fail to see how participation in 4-H differs from these other extracurricular activities, or from the many other activities which also provide educational opportunities and can impact career development.
The majority relies on Goss v. Lopez, 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975), in which the Supreme Court held that students have a property interest in public education. However, in Goss, the Court spoke in terms of the total “education process.” Id. at 576, 579, 95 S.Ct. 729. “Therefore, under Goss, the property interest which is protected by the Due Process Clause is the right to participate in the entire educational process and not the right to participate in each individual component of that process.” Mazevski v. Horseheads Cent. Sch. Dist., 950 F.Supp. 69 (W.D.N.Y.1997); see also Jeffrey v. Bd. of Trs. of Bells Indep. Sch. Dist., 261 F.Supp.2d 719, 725-26 (E.D.Tex.2003). B.K. would need to be afforded due process protection only if she had been excluded from the entire educational process. Here, she was merely excluded from an individual component, 4-H. Thus, reliance on Goss is not helpful.
Neither has B.K. demonstrated a threat of irreparable harm. Much of that analysis would mirror my discussion of B.K’s procedural due process claim. I would add the possibility of winning livestock competitions is speculative and any actual economic losses have an adequate remedy at law. S.J.W. ex rel. Wilson v. Lee’s Summit R-7 Sch. Dist., 696 F.3d 771, 779 (8th Cir.2012). Finally, B.K.’s delay in seeking preliminary injunctive relief undercuts the severity of any threatened harm and weighs against the district court’s decision to grant a preliminary injunction. Hubbard Feeds, Inc. v. Animal Feed Supplement, Inc., 182 F.3d 598, 603 (8th Cir.1999).
Weighing the Dataphase factors, I do not believe B.K. has demonstrated a likelihood of success on the merits of her claim nor demonstrated the threat of irreparable harm and, thus, is not entitled to injunctive relief.
For the foregoing reasons, I respectfully dissent.