**Lucas SMITH, Plaintiff,**

v.

**CHIPPEWA FALLS AREA UNIFIED SCHOOL DISTRICT and Board of Education, Defendants.**

No. 01–C–678–C.

United States District Court, W.D. Wisconsin.

May 29, 2002.

---

## OPINION AND ORDER

CRABB, District Judge.

In this civil action for monetary relief, plaintiff Lucas Smith contends that defendants Chippewa Falls Area Unified School District and Board of Education violated his rights to due process by removing him from an athletic team without proper procedures. Jurisdiction is present under 28 U.S.C. § 1331.

This case is presently before the court on defendants' motion for summary judgment. Because I find that plaintiff does not have a protected property interest in participating in interscholastic sports and that defendants afforded him all the process he was due, defendants' motion for summary judgment will be granted.

From the findings of fact proposed by the parties, I find the following facts to be material and undisputed.

### UNDISPUTED FACTS

#### A. *Parties*

Plaintiff Lucas Smith was formerly enrolled as a student at the Chippewa Falls high school in Chippewa Falls, Wisconsin. Defendant Chippewa Falls Area Unified School District is a public school district that administers the Chippewa Falls high school. Defendant Chippewa Falls Board of Education is the governing authority for defendant School District.

#### B. *Incident and Investigation*

From 1998 to January 2002, plaintiff attended Chippewa Falls high school.

During that time, he participated in various interscholastic sports for the school, including cross country, track and wrestling. At all times relevant to this case, the Chippewa Falls high school adopted an activity handbook that includes a Code of Conduct for student athletes.

Rebecca R. Davis is an assistant principal at the Chippewa Falls high school. On September 24, 2001, during the course of her administrative duties, Davis learned that one of the high school's student athletes had been injured in an automobile accident the previous day. The accident was believed to be alcohol-related. Davis learned that the student had attended a party before the accident at the residence of Walter Henning.

After receiving information suggesting that high school students had been drinking beer at the party, Davis and Michael Blair, the high school's activities director, began an investigation. Davis and Blair interviewed a number of football players who were believed to have attended the party. These students reported that one student drank two beers in the Henning's "pole shed."

Davis contacted Jean Henning, Walter Henning's wife, to let her know that students were being questioned about the party that had taken place at their home. On September 25, Davis and Blair continued to interview football players about the party. After being told that a beer party had taken place in the Henning's pole shed, Davis obtained permission to get two sets of photographs taken at the Henning's party. On September 26, Davis reviewed one of the sets of photographs in which it appeared that students were consuming beer. Plaintiff appeared in one of the photos with another person who held a can of beer toward the camera.

On the afternoon of September 26, plaintiff visited Davis in her office. He appeared upset and nervous because he had heard about the investigation and wanted to know what was going to happen. Davis told plaintiff that he would be contacted the next day as part of the administration's investigation. Plaintiff denied any wrongdoing.

During the evening of September 26, plaintiff's mother, Lorraine Smith, called Davis. Davis told Smith that it appeared that a beer party had taken place at the Henning's residence and the evidence gathered in the course of the investigation indicated that plaintiff had violated the school district's athletic code by attending a party where alcohol was consumed by underage students. Davis told Smith that no final decision would be made regarding her son's involvement until after he was interviewed and that she would contact Smith to inform her of the administration's determination.

On September 27, 2001, Davis received a second set of photos taken at the party. In this set, another photo showed plaintiff inside the pole shed with a group of students. During the school day, Davis's and Blair's investigation focused on plaintiff's attendance at the party. On the basis of the information they collected, Davis and Blair believed that plaintiff had been inside the pole shed for approximately half an hour.

The same day, Davis and Blair questioned plaintiff. Plaintiff admitted being at the pole shed on the night of the party but stated that he was there for only two to five minutes while he was looking for another student. Davis and Blair told plaintiff that his story was not consistent with the version that other students had told them about his attendance, in which plaintiff was present for more than five minutes and had even passed an alcoholic beverage between two other students. Plaintiff acknowledged passing the beverage. Davis and Blair told plaintiff that he

would be getting a code violation on the basis of the accounts from others about the party, the two photos showing him inside the pole shed and the responses he made during the interview. Plaintiff became very emotional and tried to persuade Davis and Blair not to issue an athletic code violation. Davis handed plaintiff the two photos and asked him if in the picture he looked like someone who just stopped by to look for someone else. Plaintiff answered, "No." Davis then asked plaintiff what he expected the school administration to do. Plaintiff replied that the consequence of his code violation should not be so great as to disqualify him from competition for the entire wrestling season. Davis and Blair explained that they were not authorized to modify the consequences of a code violation. Plaintiff was told that he would be suspended from competing in athletics under the athletic code.

Davis telephoned plaintiff's father, Scott Smith, and told him of his son's athletic code violation. Scott Smith came to school and spoke with Davis about the possibility of appealing the administration's determination.

### C. Determination and Appeals

In a letter dated September 27, 2001, Blair advised plaintiff's parents formally that their son had been suspended from athletic competition for a second violation of the Chippewa Falls athletic code. Under the code, the interview with plaintiff and the letter of suspension constituted the first step in what is referred to as a "Procedure of Due Process Related to Rules of the Athletic Code" for Chippewa Falls' student athletes.

In a letter dated September 28, 2001, plaintiff asked for a building level appeal of the code violation and his suspension. This letter initiated the second step in the athletic code's review procedure.

On October 8, 2001, the building level appeal took place. Plaintiff was present with his parents, some relatives, Walter Henning and the father of a former wrestler. The appeals committee consisted of Kathy Mehls, Robert Schmick, Jay Sweeney, William Beckwith and a high school student. Davis and Blair also attended the appeal hearing. At the hearing, Blair distributed information regarding the procedure the appeals committee would follow. He explained that the purpose of the hearing was to determine whether a code violation had occurred. Blair then presented a summary of the information gathered during the investigation and passed around the photographs taken at the party. Plaintiff was given an opportunity to respond to the administration's case; he chose to do so. The appeals committee voted 5–0 to uphold the finding that a code violation had occurred.

In a letter dated October 9 addressed to plaintiff's parents, Blair confirmed that the building level appeal committee had decided to uphold the finding of a code violation. He added that plaintiff could have the decision reviewed at the Board of Education level by submitting a written request for a hearing. Under the athletic code, an appeal at the board level is the third and final step of the code violation review procedure.

In a letter dated October 15, 2001 to plaintiff's parents, Blair acknowledged receipt of plaintiff's request to appeal to the Board of Education level. On October 24, 2001, the board appeal took place at a conference room in the school district's administration building. A quorum of the board was present. Plaintiff attended the appeal with his parents and was represented by a lawyer. Blair presented the administration's case that a violation had occurred and Davis provided a statement to the board. Plaintiff's lawyer presented his case in response. After hearing from both sides and after deliberation, the board an-

nounced that it had voted to uphold the administration's determination that plaintiff had committed an athletic code violation. Under the school's athletic code, the board's decision was final. The board's determination also affirmed plaintiff's suspension from competing in interscholastic athletics under the code.

On January 21, 2001, plaintiff moved to Colorado, ending his career as a student at the Chippewa Falls high school.

## OPINION

■ Plaintiff contends that defendants denied him procedural due process by making the determination that he violated the school's athletic code and suspending him from interscholastic competition as a consequence. A procedural due process claim against government officials requires proof of inadequate procedures and interference with a liberty or property interest. *Board of Curators of University of Missouri v. Horowitz*, 435 U.S. 78, 82, 98 S.Ct. 948, 55 L.Ed.2d 124 (1978). Plaintiff's claim fails on both fronts. First, it is doubtful that plaintiff has a protected property interest in participating in interscholastic sports. Although neither the Supreme Court nor the Court of Appeals for the Seventh Circuit has made such a ruling, the Court of Appeals for the Sixth Circuit and the preponderance of federal district courts considering the issue have held that the opportunity to participate in extracurricular activities is not a protected property interest. *Poling v. Murphy*, 872 F.2d 757, 764 (6th Cir.1989); *Hamilton v. Tennessee Secondary School Athletic Assoc.*, 552 F.2d 681, 682 (6th Cir.1976); *Pegram v. Nelson*, 469 F.Supp. 1134, 1139 (M.D.N.C.1979); *Wooten v. Pleasant Hope School Dist.*, 139 F.Supp.2d 835 (W.D.Mo. 2000); William D. Valente, *Education Law* 167 (1985).

■ Plaintiff does not develop his argument that he has a protected interest in participating in sports in any meaningful way, other than to assert that he "had a reasonable expectation that he could not be suspended from participation unless there was sufficient evidence submitted that he had violated the Code of Conduct." Plt.'s Br. in Opp., dkt. # 20, at 2. "Arguments not developed in any meaningful way are waived." *Central States, Southeast and Southwest Areas Pension Fund v. Midwest Motor Express, Inc.*, 181 F.3d 799, 808 (7th Cir.1999); *see also Finance Investment Co. (Bermuda) Ltd. v. Geberit AG*, 165 F.3d 526, 528 (7th Cir.1998); *Colburn v. Trustees of Indiana University*, 973 F.2d 581, 593 (7th Cir.1992) ("[plaintiffs] cannot leave it to this court to scour the record in search of factual or legal support for this claim); *Freeman United Coal Mining Co. v. Office of Workers' Compensation Programs, Benefits Review Board*, 957 F.2d 302, 305 (7th Cir.1992) (court has "no obligation to consider an issue that is merely raised, but not developed, in a party's brief"). Accordingly, plaintiff has failed to demonstrate that he has a property interest entitling him to procedural due process protections.

■ Even if I were to assume that plaintiff has a protected property interest entitling him to due process protections, he has failed to establish that defendants did not afford him appropriate procedures in deciding to suspend him from athletic competition. In *Goss v. Lopez*, 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975), the Supreme Court addressed procedural due process requirements in educational settings. The court held that in connection with the suspension of a student from public school for disciplinary reasons, due process requires "that the student be given oral or written notice of the charges against him and, if he denies them, an explanation of the evidence the authorities have and an opportunity to present his

side of the story." *Id.* at 581, 95 S.Ct. 729. Under this standard, a formal hearing is not required. Instead, the holding in *Goss* requires only an "informal give-and-take" between the student and the administration disciplining him that gives the student "the opportunity to characterize his conduct and put it in what he deems the proper context." *Id.* at 584, 95 S.Ct. 729.

Regardless what the minimal procedures are that defendants had to follow in suspending plaintiff from the interscholastic sports program, their conduct comported with procedural due process. After school administrators began to suspect that plaintiff had been present at a party where underage students were drinking alcoholic beverages and did not leave "immediately" as the Conduct Code requires, Davis and Blair interviewed him. Relying on his responses at the interview, as well as interviews about plaintiff's attendance at the party and photographs taken at the party, Davis and Blair told plaintiff that he would be getting an athletic code violation. The same day, they sent plaintiff's parents a letter informing them that plaintiff had been suspended from athletic competition. At the building level appeal that took place a few days later, defendants presented a summary of the information that led to their finding that plaintiff had violated the athletic code, including the photographs. Plaintiff was present and responded to the administration's case. On appeal to the school board, plaintiff was represented by counsel, who responded to defendants' presentation of the case. After deliberation, the board voted to uphold the determination and the suspension, the final step in the appeals procedure.

The undisputed facts establish that plaintiff was afforded procedural due process. He was allowed to engage in "give-and-take" with the school administrators investigating his case at the initial investigation stage and at all levels of appeal provided for in the athletic code. Defendants presented the evidence upon which they reached their determination and plaintiff was permitted to respond to that evidence and to give his own version of the facts. Although plaintiff may believe that defendants' athletic code is draconian, nothing in the undisputed facts supports an inference that defendants' decision to suspend plaintiff from athletic competition was arbitrary and capricious, as plaintiff argues. Instead, taking the facts in the light most favorable to plaintiff, I find that no reasonable jury could find that defendants denied plaintiff procedural due process. I will grant defendants' motion for summary judgment.

Plaintiff contends that in addition to defendants' violation of his federal constitutional rights, defendants violated parallel provisions under the Wisconsin constitution. Because I am granting defendants' motion for summary judgment as to all of the federal constitutional claims, I decline to exercise jurisdiction over his state law claims. *Groce v. Eli Lilly & Co.,* 193 F.3d 496, 500 (7th Cir.1999) ("a district court has the discretion to retain or to refuse jurisdiction over state law claims").

## ORDER

IT IS ORDERED that the motion for summary judgment filed by defendants Chippewa Falls Unified School District and the Board of Education is GRANTED. The clerk of court is directed to enter judgment for defendants and close this case.