DOMINIC J. and Gloria, Individually and as parents and natural guardians of Dominic M., a juvenile, Plaintiffs,

v.

WYOMING VALLEY WEST HIGH SCHOOL, Irvin T. Deremer and Frank Tribendis, Defendants.

No. CIV.A.3:03–CV–458.

United States District Court, M.D. Pennsylvania.

March 22, 2005.

Peter G. Loftus, Loftus Law Firm, P.C., Waverly, PA, for Plaintiffs.

Ellis H. Katz, Sweet, Stevens, Tucker, & Katz, LLP, New Britain, PA, Jason R. Wiley, Sweet, Stevens, Tucker & Katz, LLP, Doylestown, PA, for Defendants.

## MEMORANDUM

CAPUTO, District Judge.

Presently before the Court is Defendants Wyoming Valley West High School ("WVW"), Irvin T. DeRemer and Frank T. Tribendis' Motion For Summary Judgment. (Doc. 25.) The Court will grant Defendants' motion with respect to all of Plaintiffs' claims in Count I brought on their own behalf because they lack standing. The Court will dismiss all claims in Count I brought against Defendants Tribendis and DeRemer in their official capacities as duplicative. The Court will grant Defendants' motion with respect to all remaining claims in Count I for the reasons set forth below. The Court will dismiss Count II because the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), Pub.L. No. 104–191, 110 Stat.1936 (1996), does not provide a private right of action. The Court will also decline to exercise supplemental jurisdiction over Plaintiffs' state law claims set forth in Counts III, IV, and V. Accordingly, Counts III, IV and V will be dismissed without prejudice. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367(a).

## BACKGROUND

Plaintiffs are the parents of Dominic M. During the 2002–2003 school year, Dominic M. was a sophomore at WVW and a member of the WVW swim and water polo teams. During this same period, Defendant Irvin T. DeRemer was the principal at WVW and Defendant Frank T. Tribendis coached the WVW swim and water polo teams.

Plaintiffs provided evidence that on February 20, 2002, Defendant Tribendis requested Plaintiff Gloria to take Dominic M. for a drug screening. Plaintiffs also provided evidence that Defendant Tribendis

conditioned Dominic M.'s continued participation as a member of the WVW swim team on receiving a negative result at the drug screening. The parties do not dispute that the results were negative.

It is undisputed that on June 17, 2002, Dominic M. went to a non-mandatory swim practice at the Kingston Municipal Pool at 6:00 a.m. Plaintiffs provided evidence that after approximately fifteen minutes of practice, Defendant Tribendis verbally attacked Dominic M.'s work ethic. Plaintiffs provided evidence that Dominic M. then left the pool and went to the locker room where he fell asleep waiting for his father, Plaintiff Dominic J., to pick him up. Plaintiffs further presented evidence that later that day, Defendant Tribendis informed Dominic M. that he was uncoachable and no longer wanted at summer practice.

It is undisputed that on July 15, 2002, Defendant Tribendis called Plaintiff Dominic J. to request his attendance at a meeting with Defendants Tribendis and DeRemer to discuss a serious situation. This meeting was held on July 23, 2002. The meeting was attended by Defendants Tribendis and DeRemer and Plaintiffs. Plaintiffs presented evidence that during this meeting Defendant Tribendis discussed his suspicions that Dominic M. had engaged in the use of illegal narcotics. Also during this meeting, Defendant Tribendis gave Plaintiffs the name of a counselor for Dominic M. to see.

Plaintiffs submitted evidence that on August 6, 2002, Defendant Tribendis telephoned Plaintiff Dominic J. and informed him that Dominic M. would not be permitted to play on the WVW water polo team.[1] Plaintiffs submitted evidence that on August 12, 2002, Defendant Tribendis informed members of the WVW swim team attending a summer practice at the Kingston Municipal Pool that Dominic M. was off the team, that Dominic M. was in need of drug rehabilitation and that members of the team were not to associate with Dominic M. Following this incident, Plaintiff Gloria attempted to speak with Defendant Tribendis about Dominic M. but was told by Defendant Tribendis that he would call the police if she did not leave the Kingston Municipal Pool.

Plaintiffs presented evidence that on August 22, 2002, Dominic M. underwent an evaluation at a drug treatment facility. Plaintiffs were informed that Dominic M. was not suffering from a substance abuse problem. Plaintiffs also provided evidence that on August 23, 2002, Defendant DeRemer was informed of the results of Dominic M.'s evaluation at the drug treatment facility. Plaintiffs provided evidence that they again requested a meeting with Defendant DeRemer, but their request was denied. Plaintiffs provided evidence that on September 10, 2002, someone cut the lock off of Dominic M.'s locker at WVW, searched the locker and seized its contents. Plaintiffs allege that the only person who could have done this was Defendant Tribendis.

Plaintiffs presented evidence that on October 25, 2002, Dominic M. met with Defendant Tribendis and requested permission to join the WVW swim team. This request was denied. Plaintiffs also provided evidence that Dominic M. informed Defendant DeRemer of the results of this meeting. Plaintiffs provided evidence that Defendant DeRemer told Dominic M. that he would talk to Defendant Tribendis about it. Plaintiffs submitted evidence

---

1. Defendant Tribendis also terminated Dominic M.'s summer employment at the Kingston Municipal Pool on August 6, 2002. Plaintiffs make no claim with respect to the termination.

that they never heard from Defendant DeRemer on the matter again.

Plaintiffs filed this action on their own behalf and on behalf of Dominic M. on March 14, 2003. (Doc. 1.) Defendants filed a motion for summary judgment on June 30, 2004. (Doc. 25.) The motion is fully briefed and ripe for disposition.

## LEGAL STANDARD

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). A fact is material if proof of its existence or nonexistence might affect the outcome of the suit under the applicable substantive law. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

Where there is no material fact in dispute, the moving party need only establish that it is entitled to judgment as a matter of law. Where, however, there is a disputed issue of material fact, summary judgment is appropriate only if the factual dispute is not a genuine one. See id. at 248, 106 S.Ct. 2505. An issue of material fact is genuine if "a reasonable jury could return a verdict for the nonmoving party." Id.

Where there is a material fact in dispute, the moving party has the initial burden of proving that: (1) there is no genuine issue of material fact; and (2) the moving party is entitled to judgment as a matter of law. See 10A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2D § 2727 (2d ed.1983). The moving party may present its own evidence or, where the nonmoving party has the burden of proof,

simply point out to the Court that "the nonmoving party has failed to make a sufficient showing of an essential element of her case." Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

All doubts as to the existence of a genuine issue of material fact must be resolved against the moving party, and the entire record must be examined in the light most favorable to the nonmoving party. See White v. Westinghouse Elec. Co., 862 F.2d 56, 59 (3d Cir.1988). Once the moving party has satisfied its initial burden, the burden shifts to the nonmoving party to either present affirmative evidence supporting its version of the material facts or to refute the moving party's contention that the facts entitle it to judgment as a matter of law. See Anderson, 477 U.S. at 256–257, 106 S.Ct. 2505.

The Court need not accept mere conclusory allegations, whether they are made in the complaint or a sworn statement. Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990). In deciding a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249, 106 S.Ct. 2505.

## DISCUSSION

In Count I of the Complaint, Plaintiffs allege that Defendants violated 42 U.S.C. § 1983 by infringing upon Dominic M.'s rights protected under the First, Fourth, and Fourteenth Amendments of the United States Constitution. Plaintiffs also allege violations of 42 U.S.C. § 1985 and 42 U.S.C. § 1986 in Count I. In Count II of the Complaint, Plaintiffs allege that Defendants violated HIPAA. In the remaining counts of the Complaint, Plaintiffs assert

various pendant state law claims including invasion of privacy (Count III), defamation (Count IV), and intentional infliction of emotional distress (Count V). The Court will address each of these claims and Defendants' arguments for summary judgment in turn below.

## 1) Federal Claims

### A) Standing

Defendants WVW, Tribendis and DeRemer have moved for summary judgment on all federal claims brought by Plaintiffs on their own behalf on the basis that they lack standing. The Court agrees.

At the threshold of a determination of whether a party has Article III standing is the requirement that they have suffered an injury-in-fact. *The Pitt News v. Fisher*, 215 F.3d 354, 360 (3d Cir.2000). Here, Plaintiffs have not alleged any injury relating to their federal claims. Each of the federal claims alleged in the Complaint deal solely with conduct directed at Dominic M. In addition to their failure to allege any injury, Plaintiffs have also not provided any evidence that they suffered an injury related to their federal claims. Plaintiffs' counsel's statements contained in the brief in opposition simply do not constitute evidence. (*See* Doc. 37 at 6–8.) Therefore, the Court finds that Plaintiffs lack standing to bring the federal claims averred in the Complaint on their own behalf. Accordingly, the Court will grant Defendants' motion with respect all federal claims brought by Plaintiffs on their own behalf.

### B) Count I: Defendants WVW, Tribendis and DeRemer

Defendants WVW, Tribendis and DeRemer submit that Count I fails to state a claim upon which relief can be granted. Although Defendants certainly are correct in noting that a party may not bring a cause of action based solely on a constitutional violation, it is clear to the Court that Plaintiffs have properly invoked the remedial power of the civil rights statutes. Consequently, summary judgment on this basis would be inappropriate.

### C) Count I: Defendants Tribendis and DeRemer In Their Official Capacity

Although styled as a motion for summary judgment, Defendants Tribendis and DeRemer seek dismissal of Count I of the Complaint insofar as it seeks to hold them liable in their official capacities. Plaintiffs concede that it would be duplicative to sue Defendant WVW, the municipal entity, and Defendants Tribendis and DeRemer in their official capacities. Plaintiffs contend, however, that Defendants Tribendis and DeRemer are being sued in their individual capacity, not their official capacity. Although the Complaint is not clear, the Court concludes that Plaintiffs are suing Defendants Tribendis and DeRemer in their individual capacities. In light of Plaintiffs' representations, the Court will dismiss as duplicative all claims in Count I brought against Defendants Tribendis and DeRemer in their official capacities.

### D) Count I: Section 1983

In order to state a claim under § 1983, Dominic M. must have been deprived of a federally protected right by someone acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988) (citing *Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981)). The absence of a state actor or a constitutional harm will result in the failure of the § 1983 claim alleged in Count I. *See id.*

#### i) Defendant WVW

Defendant WVW moves for summary judgment on Plaintiffs' § 1983 claims on

the basis that the Plaintiffs failed to submit any evidence of a violation of a constitutionally protected right pursuant to a policy, practice or custom of Defendant WVW. Plaintiffs respond by arguing that Defendant WVW, a governmental entity, may be held liable pursuant to § 1983 for the conduct of its employees under the doctrine of *respondeat superior.* (*See, e.g.,* Doc. 37 at 19). Despite Plaintiffs' contentions, the Supreme Court has consistently refused to hold municipalities or other governmental entities liable under the doctrine of *respondeat superior. See, e.g., Oklahoma City v. Tuttle,* 471 U.S. 808, 818, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985). Rather, in order for a municipality or other governmental entity to be liable pursuant to § 1983, a plaintiff must establish a deprivation of a constitutionally protected right resulting from a policy, practice, or custom. *Monell v. Dept. of Soc. Servs.,* 436 U.S. 658, 691–94, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). In the instant matter, Plaintiffs have failed to allege or provide any evidence that any of the purported constitutional violations resulted from a policy, practice or custom. In fact, Plaintiffs alleged that the constitutional violations resulted from a failure to follow WVW policy. (Doc. 1 ¶¶ 53, 55, 56.) While a failure to follow a written policy could in fact be the policy, practice or custom of a particular governmental entity, the Complaint is also bereft of any allegations to this effect. More importantly, Plaintiffs have provided no evidence on this point. Consequently, the Court will grant Defendants' motion with respect to Plaintiffs' § 1983 claims against Defendant WVW.

### ii) Defendants Tribendis and DeRemer

### a) State Actor

■ Defendants move for summary judgment on Plaintiffs' § 1983 claims based on Plaintiffs' failure to provide evidence of a state action with respect to Defendants Tribendis and DeRemer. Defendants Tribendis and DeRemer argue that because Plaintiffs conceded that all claims against them are in their individual capacity, there can be no state action. (Doc. 42 at 5.) The Court disagrees. The Supreme Court has held that personal liability may be established in a § 1983 action if its shown that the "official, acting under color of state law, caused the deprivation of a federal right." *Hafer v. Melo,* 502 U.S. 21, 25, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991) (quoting *Kentucky v. Graham,* 473 U.S. 159, 166, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985)). Thus, it does not follow that simply because an action is brought against a government official in his or her individual capacity that state action is automatically absent.

■ With respect to Defendants' assertion that state action is completely absent, the Court again disagrees. With respect to Defendant Tribendis, Plaintiffs provided evidence that Defendant Tribendis, in his capacity as coach at WVW, removed Dominic M. from the WVW swim and water polo teams, prevented Dominic M. from associating with other members of the WVW swim and water polo teams, and told members of the swim team that Dominic M. needed rehabilitation. (Doc. 38, Ex. K.) Plaintiffs also presented evidence that Defendant Tribendis, in his capacity as a coach of the WVW swim team, required Dominic M. to undergo a drug screening. (Doc. 38, Ex. L at 1.) Although Defendant Tribendis did not actually give the drug screening to Dominic M., there is evidence that Defendant Tribendis, in his capacity as coach of the WVW swim team, requested that Plaintiff Gloria give Dominic M. a drug screening. (Doc. 38, Ex. L at 1.)

Moreover, there is evidence that Dominic M.'s continued participation on the WVW swim team was conditioned on a negative drug screening result. (*Id.*) In fact, Defendant Tribendis readily admitted that he requested that Dominic M. be given a drug screening. (Doc. 29, Ex. A at 23–24.) Defendant Tribendis also admitted that if the drug screening had come back positive, Dominic M. would not have been permitted to swim for WVW. (Doc. 29, Ex. A at 24.) Because Plaintiffs have submitted evidence that Defendant Tribendis, a public official, required Dominic M. to undergo a drug screening in order to continue participating as a member of the WVW swim team, the Court finds that Defendant Tribendis' conduct constitutes state action. Consequently, the Court finds that Plaintiffs submitted evidence of state action with respect to the aforementioned conduct of Defendant Tribendis.

■ Plaintiffs, however, have failed to present any evidence of state action with respect to the intrusion into Dominic M.'s locker. The only evidence Plaintiffs submitted in opposition to Defendants' motion is an affidavit prepared by Dominic M. (Doc. 38, Ex. K.) In the affidavit, Dominic M. states:

> I went in to get some stuff out of my locker to take home and the lock from my locker was laying either next to or behind the lockers and it was cut with a bolt cutter. It was my own personal combination lock. What were missing were team suits and a pair of weight training gloves. All of these were purchased by me. I questioned a few members of team [sic] and they knew nothing about it. I spoke to the janitor, who we called "Janitor Paul," and I asked him about it because he maintains the locker room for the most part. He told me that he didn't cut any locks off, but he

told me that the only person that could do that would be Coach Tribendis.

(Doc. 38, Ex. K.) Consequently, the only evidence presented by Plaintiffs that Defendant Tribendis cut off Dominic M.'s lock, searched the locker and seized his property is the hearsay statement of the janitor. The United States Court of Appeals for the Third Circuit has held that a court may consider statements constituting hearsay when adjudicating a motion for summary judgment if those statements would be admissible at trial. *See Shelton v. Univ. of Med. & Dentistry of N.J.,* 223 F.3d 220, 223 n. 2 (3d Cir.2000). However, there is no basis upon which the janitor's statement would be admissible at trial against Defendant Tribendis. Therefore, it is not appropriate for the Court to consider this evidence. As a result, Plaintiffs have offered no competent evidence that Defendant Tribendis or any other state actor had any involvement in the intrusion into Dominic M.'s locker. Plaintiffs simply cannot rely on the conclusory allegations set forth in the Complaint. *Lujan,* 497 U.S. at 888, 110 S.Ct. 3177. Therefore, the Court will grant Defendants' motion with respect to this claim.

■ With respect to Defendant DeRemer, Plaintiffs have failed to allege or provide evidence of Defendant DeRemer's direct participation in the alleged violations of Dominic M.'s constitutional rights. However, as a supervisor, Defendant DeRemer can be held liable pursuant to § 1983 if he directed others to violate Dominic M.'s constitutional rights or had knowledge of and acquiesced in his subordinates' violations of Dominic M.'s constitutional rights. *Robinson v. City of Pittsburgh,* 120 F.3d 1286, 1293 (3d Cir.1997). Plaintiffs have presented no evidence that Defendant DeRemer directed Defendant Tribendis to violate Dominic M.'s constitutional rights. Moreover, with respect to

the claims relating to the drug screening, locker search, and disclosure of private medical information, Plaintiffs have failed to present any evidence that Defendant DeRemer had any knowledge of Defendant Tribendis' alleged conduct. However, Plaintiffs do provide some evidence, albeit indirect, that Defendant DeRemer had knowledge of the removal of Dominic M. from the WVW swim and water polo teams. (Doc. 38, Ex. K at 9–10, 11.) Because Plaintiffs also presented evidence that Defendant DeRemer took no action when he learned of Dominic M.'s removal from the teams (Doc. 38, Ex. K at 13), his acquiescence may be inferred. Consequently, the Court will grant Defendants' motion with respect to all of Plaintiffs' § 1983 claims against Defendant DeRemer except for Plaintiffs' procedural due process and First Amendment claims relating to Dominic M.'s removal from the WVW swim and water polo teams.

### b) First Amendment Claim

Plaintiffs allege that Defendant Tribendis violated Dominic M.'s First Amendment right to freedom of association when he precluded Dominic M. "from associat[ing] with classmates in the school context." (Doc. 1 ¶ 52.) Specifically, Plaintiffs provided evidence that Defendant Tribendis told members of the WVW swim team that they were forbidden from associating with Dominic M. (Doc. 38, Ex. K at 7.) Plaintiffs also provided evidence that Defendant Tribendis refused to allow Dominic M. to participate on the WVW swim and water polo teams. (Doc. 38, Ex. K at 3, 11 & 13.) Plaintiffs assert that Defendant Tribendis' conduct interfered with Dominic M.'s right to free association. Defendants argue that such conduct does not amount to a violation of the First Amendment.

Although the right to free association is not expressly prescribed within the text of the First Amendment, it is by now axiomatic that the First Amendment "embraces such a right in certain circumstances." *City of Dallas v. Stanglin,* 490 U.S. 19, 23–27, 109 S.Ct. 1591, 104 L.Ed.2d 18 (1989). The Supreme Court's jurisprudence refers to the "constitutionally protected freedom of association in two distinct senses." *Roberts v. United States Jaycees,* 468 U.S. 609, 617, 104 S.Ct. 3244, 82 L.Ed.2d 462 (1984). In one sense, the Supreme Court "has recognized a right to associate for the purpose of engaging in those activities protected by the First Amendment—speech, assembly, petition for the redress of grievances, and the exercise of religion." *Id.* at 618, 104 S.Ct. 3244. In the instant matter, Plaintiffs do not attempt to assert that Plaintiff Dominic M. was precluded from associating with individuals for the purpose of engaging in activities protected by the First Amendment. Consequently, the Court need not consider this facet of the right to free association.

█ The other sense in which the Supreme Court has referred to the freedom of association involves a recognition that "choices to enter into and maintain certain intimate human relationships must be secured against undue intrusion by the State." *Id.* at 617–618, 104 S.Ct. 3244. The personal affiliations protected under this facet of the right to free association are those which "reflect the considerations that have led to an understanding of freedom of association as an intrinsic element of personal liberty," *id.* at 620, 104 S.Ct. 3244, such as those relationships involving "the creation and sustenance of a family—marriage, the raising and education of children, and cohabitation with one's relatives," *id.* at 619–20, 104 S.Ct. 3244 (internal citations omitted). On the other hand,

personal relationships of a purely social nature are not protected. *Gruenke v. Seip*, 225 F.3d 290, 308 (3d Cir.2000) ("[A]lleged interference with [the plaintiff's] interaction with other swimmers clearly does not amount to a violation of a protected right.").

■ In the instant matter, Plaintiffs only presented evidence of an interference with affiliations involving Dominic M. and his peers at school. Despite Plaintiffs' contentions otherwise, the evidence submitted clearly demonstrates that the relationships that Defendant Tribendis interfered with lack the level of intimacy required under the First Amendment. It is clear that the relationships of members of the same swim team, whether it be during school or summer break, are of a purely social nature. Consequently, the Court will grant Defendants' motion with respect to Plaintiffs' First Amendment claims against Defendant Tribendis. Moreover, because there is no constitutional violation, Defendant DeRemer may not be held liable in his supervisory capacity. Accordingly, the Court will also grant Defendants' motion with respect to Plaintiffs' First Amendment claims against Defendant DeRemer.

#### c) Qualified Immunity

Defendants Tribendis and DeRemer also argue that they are entitled to qualified immunity with respect to Plaintiffs' Fourth and Fourteenth Amendment claims.[2] A public official subject to suit pursuant to § 1983 may be entitled to the defense of qualified immunity. *Carswell v. Borough of Homestead*, 381 F.3d 235, 241 (3d Cir. 2004). To determine whether the official is entitled to the defense, the Court must determine: (1) whether a constitutional vi-

olation has occurred; and (2) whether that right was clearly established at the time of the alleged violation. *Id.* The Court now turns to an analysis of Plaintiffs' Fourth and Fourteenth Amendment claims utilizing this formula.

#### i) Fourth Amendment

■ The only remaining Fourth Amendment claim is in regard to Plaintiffs' allegation that Dominic M. was subjected to an unreasonable search when Defendant Tribendis required him to submit to a drug screening. Because Defendant Tribendis, a public school official, requested that Dominic M. submit to a drug screening in order to continue participating as a member of the WVW swim team, Defendant Tribendis' request constitutes a search within the meaning of the Fourth Amendment. *See Gruenke*, 225 F.3d at 301; *see also Vernonia Sch. Dist. 47J v. Acton*, 515 U.S. 646, 652, 115 S.Ct. 2386, 132 L.Ed.2d 564 (1995) (noting state compelled collection and testing of urine constitutes a search). Consequently, the Court must determine whether the search was in violation of Dominic M.'s Fourth Amendment rights.

In *New Jersey v. T.L.O.*, the Supreme Court held that the United States Constitution, via the Fourteenth Amendment, prohibits unreasonable encroachments upon public school students' Fourth Amendment rights by public school officials. 469 U.S. 325, 334, 105 S.Ct. 733, 83 L.Ed.2d 720 (1985). The constitutionality of a search depends on its reasonableness. *Id.* at 341, 105 S.Ct. 733. While applicable in most warrantless searches, the probable cause standard is not always appropriate for determining the reasonableness of a

---

**2.** The Court notes that the only remaining § 1983 claim against Defendant DeRemer is Plaintiffs' Procedural Due Process claim re-
garding Dominic M.'s removal from the WVW swim and water polo teams.

search. *Id.* The Supreme Court has recognized that there are certain settings, such as the public school context, in which "special needs beyond the normal need for law enforcement, make the warrant and probable cause requirement impracticable." *Vernonia,* 515 U.S. at 653, 115 S.Ct. 2386, (quoting *Griffin v. Wisconsin,* 483 U.S. 868, 873, 107 S.Ct. 3164, 97 L.Ed.2d 709 (1987)); *see also Gruenke,* 225 F.3d at 301. Moreover, in such a context, individualized suspicion may not be necessary. *Bd. of Educ. v. Earls,* 536 U.S. 822, 830, 122 S.Ct. 2559, 153 L.Ed.2d 735 (2002).

■■■■■ As a result of the special needs present in the public school setting, a determination of the reasonableness of a search requires the Court to balance the individual's expectation of privacy against the government's legitimate . interests. *Vernonia,* 515 U.S. at 652–53, 115 S.Ct. 2386. In doing so, the Court must first consider the scope of the individual's expectation of privacy. *Id.* at 654, 115 S.Ct. 2386. It is important to note that it is well established that public school students enjoy a reduced expectation of privacy in comparison to the public at large. *Earls,* 536 U.S. at 830–31, 122 S.Ct. 2559; *Vernonia,* 515 U.S. at 657, 115 S.Ct. 2386. It is also well established that student athletes have an even lower expectation of privacy than those students who do not engage in athletics, *Vernonia,* 515 U.S. at 657, 115 S.Ct. 2386, or other extracurricular activities, *Earls,* 536 U.S. at 831–32, 122 S.Ct. 2559.

The Court must also consider the character of the intrusion at issue. *Vernonia,* 515 U.S. at 658, 115 S.Ct. 2386. A drug urinalysis, such as the one at issue in the case *sub judice,* may constitute a severe intrusion. *Id.* As noted in *Vernonia,* "collecting samples for urinalysis intrudes upon 'an excretory function traditionally shielded by great privacy.'" *Id.* (quoting

*Skinner v. R. Labor Executives' Assn.,* 489 U.S. 602, 609, 109 S.Ct. 1402, 103 L.Ed.2d 639 (1989)). The severity of the intrusiveness of a drug urinalysis turns on the manner in which the sample is collected and the information it discloses concerning the state of the subject's body. *Id.* Finally, the Court must consider the nature and immediacy of the governmental concern at issue and the efficacy of the means at issue for meeting it. *Vernonia,* 515 U.S. at 654–60, 115 S.Ct. 2386.

■■■■ Dominic M., as a student athlete, has a very low expectation of privacy. Moreover, although a drug urinalysis such as the one Dominic M. underwent may constitute a severe intrusion, the specific results of the test were published only to his parents and the doctor, not to any government official. Defendant Tribendis only received verbal confirmation from Plaintiff Gloria that the results were negative. Moreover, as in *Vernonia,* the drug urinalysis at issue tested for standard drugs and did not reveal any medical condition that Dominic M. may or may not have had. Although the parties have failed to present evidence as to the manner in which the sample was collected, based on the foregoing alone, the Court finds that the severity of the intrusion is significantly lessened.

The Court also finds that preventing and detecting the use of drugs by this nation's children is certainly an important interest. Defendants presented evidence that Defendant Tribendis suspected Dominic M. was using drugs because he had exhibited unusual and uncharacteristic behavior. (Doc. 29, Ex. A at 23.) Moreover, because Dominic M. was a student athlete slated to compete in upcoming swim meets, Defendant Tribendis' concern was immediate. (*See id.*) As noted by the Supreme Court, "the risk of immediate physical harm to the drug user or those with whom he is

playing his sport is particularly high." *Vernonia*, 515 U.S. at 662, 115 S.Ct. 2386. Finally, with respect to the efficacy of the means for addressing the aforementioned concern, the Court finds that subjecting Dominic M. to a drug screening was an effective means for determining whether he was in fact using drugs at the time.

It is important to point out that the Supreme Court has indicated that when a public school official compels a student athlete to undergo a drug screening, because "the government acts as guardian and tutor the relevant question is whether the search is one that a reasonable guardian and tutor might undertake." *Vernonia*, 515 U.S. at 665, 115 S.Ct. 2386. In light of the concerns of Defendant Tribendis, the evidence concerning Dominic M.'s drug use during this period (Doc. 29, Ex. D at 1), and potential harm that Dominic M. faced if Defendant Tribendis had failed to intervene, the Court finds that a reasonable guardian and tutor would in fact have undertaken the search in question. Consequently, the Court finds that the compulsory drug screening was reasonable, and hence, did not violate Dominic M.'s Fourth Amendment rights. Because of the absence of a constitutional violation, the Court need not proceed further in determining whether Defendant Tribendis is entitled to qualified immunity. Therefore, the Court will grant Defendants' motion with respect to this claim.

### ii) Fourteenth Amendment

### a) Procedural Due Process

Due to the aforementioned lack of clarity in Plaintiffs' Complaint, it is difficult to discern whether Plaintiffs are in fact asserting a procedural due process claim, and, if so, to what conduct the claim relates. However, a liberal reading of the Complaint suggests a violation of the procedural component of the Due Process Clause with respect to Dominic M.'s removal from the WVW swim and water polo teams.

To establish a cause of action for a procedural due process violation, a plaintiff must prove that a person acting under color of state law deprived him of a protected property interest without due process. *See Midnight Sessions, Ltd. v. City of Philadelphia*, 945 F.2d 667, 680 (3d Cir.1991). In light of this standard, the Court must first determine whether Dominic M. suffered a deprivation of a protected property interest.

■■■ Plaintiffs contend that Dominic M. should have been afforded a hearing prior to his removal from the swim and water polo teams by Defendant Tribendis. Defendants argue that Dominic M. does not have a protected property interest in participating in extracurricular athletic activities. In *Goss v. Lopez*, 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975), the Supreme Court held that a state must "recognize a student's legitimate entitlement to a public education as a property interest which is protected by the Due Process Clause." *Id.* at 574, 95 S.Ct. 729. The Supreme Court, however, has not had occasion to determine whether a public school student also has a protected property interest in participating in extracurricular activities such as interscholastic athletics. However, of the myriad district and appellate courts that have considered this issue, a vast number of them have held that a public school student does not have a protected property interest in participating in extracurricular activities. *See, e.g., Angstadt v. Midd–West Sch. Dist.*, 377 F.3d 338, 344 (3d Cir.2004) (affirming district court ruling that public school student did not have protected property interest in participating in extracurricular activities); *Nevares v. San Marcos Consol. Indep. Sch. Dist.*, 111 F.3d 25, 27 (5th Cir.1997);

*Poling v. Murphy,* 872 F.2d 757, 764 (6th Cir.1989); *Davenport v. Randolph County Bd. of Educ.,* 730 F.2d 1395, 1397 (11th Cir.1984); *Hebert v. Ventetuolo,* 638 F.2d 5, 6 (1st Cir.1981); *Walsh v. La. High Sch. Athletic Ass'n,* 616 F.2d 152, 159 (5th Cir. 1980); *Hamilton v. Tenn. Secondary Sch. Athletic Ass'n,* 552 F.2d 681, 682 (6th Cir. 1976); *Jeffrey v. Bd. of Tr. of Bells ISD,* 261 F.Supp.2d 719, 726 (E.D.Tex.2003); *Smith v. Chippewa Falls Area Unified Sch. Dist.,* 302 F.Supp.2d 953, 957 (W.D.Wis.2002); *Mazevski v. Horseheads Cent. Sch. Dist.,* 950 F.Supp. 69, 72–3 (W.D.N.Y.1997); *Palmer v. Merluzzi,* 689 F.Supp. 400, 410 (D.N.J. 1988), *aff'd* 868 F.2d 90 (3d Cir.1989); *Dallam v. Cumberland Valley Sch. Dist.,* 391 F.Supp. 358 (M.D.Pa.1975). Of particular note is *Dallam.* There the Court, in holding that a public school student does not have a protected property interest in playing interscholastic sports, noted:

> The property interest in education created by the State is participation in the entire process. The myriad activities which combine to form that education process cannot be dissected to create hundreds of separate property rights, each cognizable under the Constitution. Otherwise, removal from a particular class, dismissal from an athletic team, a club or any extracurricular activity, would each require ultimate satisfaction of procedural due process.

391 F.Supp. at 361. In light of the foregoing authority, the Court finds that Dominic M. does not have a protected property interest in participating in extracurricular activities, including the WVW swim and water polo teams. As Plaintiffs have failed to present evidence of a constitutional violation, the Court need not proceed further in determining whether Defendant Tribendis is entitled to qualified immunity. Accordingly, the Court will grant Defendants' motion with respect to this claim.

**b) Substantive Due Process**

Plaintiffs also allege that Defendant Tribendis violated Dominic M.'s rights protected by the substantive component of the Due Process clause by disclosing private medical information.[3] While the disclosure of private medical information or any other personal matter deserving the protections of privacy certainly implicates the substantive component of the Due Process Clause, *see, e.g., Doe v. Delie,* 257 F.3d 309, 315 (3d Cir.2001), Plaintiffs have failed to provide evidence of such a disclosure. There is no evidence that Defendant Tribendis revealed that Dominic M. had been subjected to a drug screening or that he revealed the results of the drug screening. There is also no evidence that Defendant Tribendis revealed that Dominic M. went to counseling or what was discussed at those counseling sessions. The only evidence proffered by Plaintiffs on this claim is that Defendant Tribendis told members of the general public that Dominic M. needed drug rehabilitation in order to stop using drugs. (Doc. 38, Ex. N at 2.) This statement was based upon Defendant Tribendis' general suspicions, not upon any private information to which he was privy. Although Defendant Tribendis had knowledge of the results of Dominic M.'s drug screening, it does not stand to reason that Defendant Tribendis' comments were based on this private medical information because the results indicated that Dominic M. had not

---

**3.** Plaintiffs attempt to raise an interference with familial relations claim for the first time in their brief in opposition. (Doc. 37 at 20.) Plaintiffs may not attempt to add claims via a brief in opposition to a motion for summary judgment. *Gilmour v. Gates, McDonald & Co.,* 382 F.3d 1312, 1315 (11th Cir.2004); *Grayson v. O'Neill,* 308 F.3d 808, 817 (7th Cir.2002).

been using drugs. Therefore, the Court finds that Defendant Tribendis' conduct does not constitute the disclosure of private medical information or other personal matters deserving the protections of substantive due process. Again, because Plaintiffs failed to present evidence of a constitutional violation, the Court need not proceed further in determining whether Defendant Tribendis is entitled to qualified immunity. Accordingly, the Court will grant Defendants' motion with respect to this claim.

### E) Count I: Sections 1985 & 1986

■■■ Count I of the Complaint also alleges violations of § 1985 and § 1986.[4] Plaintiffs' Complaint fails to reference a specific subsection of § 1985; however, in light of the arguments raised in Plaintiffs' brief in opposition, it appears that Plaintiffs are alleging a violation of § 1985(3). To prevail on a § 1985(3) conspiracy claim, a plaintiff must present evidence that the defendant, acting under color of state law, conspired to deprive him of a federally protected right. *Ridgewood Bd. of Educ. v. N.E. ex rel. M.E.*, 172 F.3d 238, 254 (3d. Cir.1999). The Court finds that Plaintiffs have failed to present evidence of a deprivation of a federally protected right. Therefore, the Court will grant Defendants' motion with respect to Plaintiffs' § 1985(3) claim. In addition, because a party may not maintain a claim under § 1986 unless a § 1985 claim has been established, *Robison v. Canterbury Village*, 848 F.2d 424, 431 n. 10 (3d Cir.1988), the Court will also grant Defendants' motion with respect to Plaintiffs' § 1986 claim.

---

**4.** Interestingly, Plaintiffs also attempt to assert a cause of action pursuant to 42 U.S.C. § 1988. Section 1988 does not provide a right of action, it merely details the right to attorneys fees for successful actions under the

### F) Count II: HIPAA

■■■ Count II of the Complaint asserts a claim under HIPAA. However, there is no private right of action under HIPAA. *Swift v. Lake Park High Sch. Dist. 108,* No. 03–C5003, 2003 WL 22388878, at \*4 (N.D.Ill. Oct.21, 2003) ("No federal court reviewing the matter has ever found that Congress intended HIPAA to create a private right of action."); *see also Brock v. Provident Am. Ins. Co.,* 144 F.Supp.2d 652, 657 (N.D.Tex.2001). Consequently, the Court will dismiss Count II.

### 2) State Law Claims

■■■ Counts III, IV and V allege state tort claims. (Doc. 1.) Section 1367(a) states:

> [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

28 U.S.C. § 1367(a). Cases that "derive from a common nucleus of operative fact" with federal claims are part of the same case or controversy. *United Mine Workers of Am. v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). The state law claims raised by Plaintiffs derive from the same operative facts as the federal law claims, giving the Court jurisdiction under § 1367(a). The Court, however,

other civil rights statutes. Consequently, Plaintiffs may not attempt to assert a claim pursuant to this section of the United States Code.

"may decline to exercise supplemental jurisdiction over a claim under subsection (a) if ... the district court has dismissed all claims over which it has original jurisdiction ...." 28 U.S.C. § 1367©). The Supreme Court has indicated that "if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." *United Mine Workers*, 383 U.S. at 726, 86 S.Ct. 1130. Since the Court will grant summary judgment on all Plaintiffs' federal claims, the Court will decline to exercise supplemental jurisdiction over Plaintiffs' state tort claims. Accordingly, Counts III, IV and V will be dismissed without prejudice.

## CONCLUSION

The Court will grant Defendants' motion with respect to all of Plaintiffs' federal claims brought on their own behalf because they lack standing. The Court will dismiss all claims in Court I brought against Defendants Tribendis and DeRemer in their official capacities as duplicative. The Court will grant Defendants' motion with respect to the remaining claims in Count I. The Court will dismiss Count II because there is no private right of action under HIPPA. The Court will also decline to exercise supplemental jurisdiction over Plaintiffs' state law claims set forth in Counts III, IV, and V of the Complaint. Accordingly, Counts III, IV and V will be dismissed without prejudice.

An appropriate Order follows.

## *ORDER*

**NOW**, this 22nd day of March, 2005, **IT IS HEREBY ORDERED:**

(1) Defendants Wyoming Valley West High School, Irvin T. DeRemer and Frank T. Tribendis' Motion For Summary Judgment (Doc. 25) is **GRANTED** with respect to Count I of the Complaint.

(2) Count II of the Complaint is DISMISSED.

(3) Counts III, IV, and V of the Complaint are **DISMISSED without prejudice.**

(4) The Clerk of the Court is directed to mark this case **CLOSED.**